# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK
_____

BRUNCE SMITH,

                       Plaintiff,               Civil Action No.
                                             9:12-CV-0997 (MAD/DEP)

    v.

BRIAN FISCHER, *et al.*,

                       Defendants.
_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

BRUNCE SMITH, *Pro Se*
99-A-2268
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN          KEITH J. STARLIN, ESQ.
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Brunce Smith, a New York State prison inmate, has commenced this action pursuant to 42 U.S.C. § 1983 against three individuals employed by the New York State Department of Corrections and Community Supervision ("DOCCS") alleging that they deprived him of his civil rights. Plaintiff contends that his procedural due process rights were violated by one of the defendants during a disciplinary hearing at the facility in which he was confined at the relevant times, and that the other two defendants, after learning of the violation, failed to remedy it.

Currently pending before the court is a motion filed by defendants seeking the entry of summary judgment dismissing plaintiff's complaint based on the grounds that none of them were personally involved in the alleged constitutional violation, and, in any event, no reasonable factfinder would conclude, based on the record evidence, that plaintiff was deprived adequate due process. For the reasons set forth below, I recommend that defendants' motion be granted.

## I.    BACKGROUND[1]

Plaintiff is a New York State prison inmate currently in the custody of the DOCCS. *See generally* Dkt. No. 1. While he is now incarcerated elsewhere, at the times relevant to his claims in this action, he was confined in the Auburn Correctional Facility ("Auburn"), located in Auburn, New York. *Id.*

On May 4, 2010, plaintiff was issued a misbehavior report resulting from a disturbance at Auburn.[2] Dkt. No. 1 at 4; Dkt. No. 40-5 at 10. In anticipation of a disciplinary hearing in connection with the misbehavior report, plaintiff requested assistance in preparing a defense. Dkt. No. 40-5 at 14. That request was granted, and on May 7, 2010, he met with his assistant. *Id.* On that date, plaintiff was provided a copy of the unusual incident report related to the disturbance giving rise to the misbehavior report, as well as a copy of the logbook recording admission entries into the facility's special housing unit ("SHU") during the relevant period. *Id.*

---

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

[2]    The details surrounding the incident giving rise to the misbehavior report, as well as the charges lodged against plaintiff, are not relevant to the constitutional claims asserted in this action.

Plaintiff also listed one witness, another inmate at Auburn, that he anticipated calling to testify during the disciplinary hearing. *Id.*

On or about May 10, 2010, defendant Joseph Wolczyk, the DOCCS Director of the Commissioner's Hearing Program, conducted a Tier III disciplinary hearing to address the charges contained in the misbehavior report.[3] Dkt. No. 1 at 4; Dkt. No. 40-5 at 23. Prior to the proceeding, plaintiff was escorted to the hearing room by two corrections officers. Dkt. No. 48 at 2; Dkt. No. 40-5 at 23-24. According to plaintiff, "[w]hile [he was] waiting for the hearing officer to arrive[, he] requested to be returned to his cell." Dkt. No. 48 at 2; *see also* Dkt. No. 40-5 at 23-24. Although the escorting officers asked plaintiff to sign a waiver acknowledging that he understood the hearing would be held in his absence, plaintiff refused. Dkt. No. 48 at 2; Dkt. No. 40-5 at 18, 23-25. When defendant Wolczyk arrived in the hearing room, he commenced the proceeding and asked the escorting officers to state on the record what had occurred prior to his arrival. Dkt. No. 40-5 at 23-25. After concluding that plaintiff had waived

---

[3]     The DOCCS conducts three types of inmate disciplinary hearings. *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998). Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. *Hynes*, 143 F.3d 655 n.1. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the SHU. *Id.* Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. *Id.*

his right to attend, defendant Wolczyk conducted the hearing in plaintiff's absence. Dkt. No. 48 at 2; Dkt. No. 40-5 at 23-47.

During the hearing, defendant Wolczyk asked the escorting officers to return to plaintiff's cell to inquire into whether he still wished to have the inmate witness testify at the proceeding. Dkt. No. 40-5 at 25, 26; *see also* Dkt. No. 48-2 at 3. According to plaintiff, he "inform[ed] the escort officer[s] that he did not need inmate Watson as a witness." Dkt. No. 48-2 at 3; *see also* Dkt. No. 40-5 at 28-29. Also during the hearing, defendant Wolczyk reviewed the hearing record sheet and read a copy of the misbehavior report issued to plaintiff into the record. Dkt. No. 40-5 at 25. There is no evidence in the record suggesting that defendant Wolczyk ever spoke to plaintiff directly regarding his absence from the hearing.

The following day, on or about May 11, 2010, defendant Wolczyk read into the record a written disposition finding plaintiff guilty of all of the charges pending against him. Dkt. No. 40-5 at 30. Plaintiff was sentenced to a period of twelve months of disciplinary SHU confinement, with a corresponding loss of commissary, package, and phone privileges, and a recommended loss of twelve months of his good-time credits. Dkt. No. 1 at 4; Dkt. No. 40-5 at 30, 33.

Following the conclusion of the hearing, plaintiff appealed defendant Wolczyk's determination to the DOCCS central office.[4] Dkt. No. 48 at 5; Dkt. No. 40-5 at 38-44. On July 30, 2010, defendant Donald Venettozzi, the Acting Director for the DOCCS Special Housing/Inmate Disciplinary Program, affirmed the disciplinary determination. Dkt. No. 1 at 7; Dkt. No. 40-5 at 46; Dkt. No. 48 at 5.

In or about October 2010, plaintiff filed a petition in the New York State Cayuga County Supreme Court, pursuant to New York Civil Practice Law and Rules Article 78, against defendant Fischer further challenging the determination rendered by defendant Wolczyk following the disciplinary hearing. Dkt. No. 40-4; Dkt. No. 48 a 5. In his petition to the Article 78 court, plaintiff asserted that, because defendant Wolczyk did not specifically advise him of his right to attend the disciplinary hearing and the consequences of failing to attend, defendant Fischer violated 7 N.Y.C.R.R. § 254.6(a) and his due process rights by affirming the disciplinary determination. Dkt. No. 40-4; Dkt. No. 48 at 6. On September 20, 2011, Acting Supreme Court Justice Thomas Leone granted plaintiff's

---

[4]     There are three appeals in the record authored by plaintiff regarding defendant Wolczyk's determinations following the hearing on May 10-11, 2010. Dkt. No. 40-5 at 38-40, 41-42, 43-44. One of the appeals is dated May 26, 2010, while the other two are dated July 7, 2010. *Id.* None of them, however, are addressed to any specific individual. *Id.* According to plaintiff, he sent them to either the Director of Special Housing or defendant Fischer, the DOCCS Commissioner. Dkt. No. 48 at 5.

petition. Dkt. No. 40-6; Dkt. No. 48 at 6. After acknowledging that plaintiff's

petition asserted a due process violation, Justice Leone issued the

following ruling:

> An inmate has a fundamental right to be present at
> his or her disciplinary hearing unless he or she
> refuses to attend or is excluded for reasons of
> institutional safety or correctional goals (*see eg
> Matter of Rush v. Goord*, 2 AD3d 1185 (3d Dept
> 2003) 7 NYCRR 254.6(b)). '[I]n order for an inmate
> to make a knowing, voluntary and intelligent waiver
> of that right, he or she must be informed of that right
> and of the consequences of failing to appear at the
> hearing' (*id* at 1186). Here, while it is clear that
> Petitioner was aware that the hearing was about to
> begin and that he had an opportunity to present a
> witness, the record is devoid of any evidence that
> Petitioner was advised of his right to attend the
> hearing or of the consequences of his failure to
> attend (*see id*).
>
> Although the refusal form includes language
> advising an inmate of his right to attend the hearing
> and that the hearing would be held in the inmate's
> absence, there is no testimony here that Petitioner
> read the form or that the language was read to
> Petitioner. Moreover, while the correction officers
> returned to Petitioner's cell to ask about whether he
> still wished to call an inmate witness, they did not
> testify that they advised Petitioner of his right to
> attend the hearing or the consequences of his
> failure to do so. Without such evidence, there is
> nothing to show that Petitioner knowingly and
> voluntarily waived his right to attend the hearing
> (*see eg Matter of Ifill v. Fischer*, 79 AD3d 1322 (3d
> Dept 2010); *Matter of Tafari v. Selsky*, 40 AD3d
> 1172 (3d Dept 2007); *but see Matter of Williams v.*

> *Bezio*, 79 AD3d 1556 (3d Dept 2010)). As a result,
> this Court is constrained to grant the Petition.

*Id.* at 3-4.

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on June 20, 2012, by the filing of a complaint and an accompanying application to proceed *in forma pauperis* ("IFP"). Dkt. Nos. 1, 2. Following an initial review of the complaint and IFP application, I issued a decision, on August 1, 2012, granting plaintiff leave to proceed IFP and approving the filing of his complaint. Dkt. No. 5. Plaintiff's sole claim in this action is an alleged Fourteenth Amendment due process violation asserted against defendants Wolczyk, Venettozzi, and Fischer arising from the disciplinary hearing conducted on May 10-11, 2010. *See generally* Dkt. No. 1. As relief, plaintiff seeks $100,000 in damages. *Id.* at 9.

Following the completion of discovery, defendants filed the pending motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, seeking dismissal of plaintiff's due process claim. Dkt. No. 40. Defendants argue that (1) each of them was not personally involved in the alleged constitutional violation; (2) there is no record evidence giving rise to a dispute of material fact regarding whether any of plaintiff's procedural due process rights were violated; and (3) because plaintiff had

actual knowledge of the consequences of failing to attend his disciplinary hearing, he should be barred from recovery. *See generally* Dkt. No. 40-10. Plaintiff has since responded in opposition to the motion. Dkt. No. 48.

Defendants' motion, which is now fully briefed, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See* Fed. R. Civ. P. 72(b).

## III. DISCUSSION

### A. Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure. Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250. When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable

conclusion as to the verdict").

    B.    Issue Preclusion

    Although defendants do not address this issue in their motion,

plaintiff contends that Justice Leone's favorable decision in connection

with his Article 78 petition should be given preclusive effect with respect to

his due process claim because he asserted a due process violation in that

proceeding. Dkt. No. 48-1 at 12-13.

    "The preclusive effect of a judgment is defined by claim preclusion

and issue preclusion, which are collectively referred to as 'res judicata.'"

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (footnote omitted). "Issue

preclusion . . . bars 'successive litigation of an issue of fact or law actually

litigated and resolved by a valid court, . . . even if the issue recurs in the

context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *N.H. v. Me.*,

532 U.S. 742, 748-49 (2001)). Under New York law, which the court is

required to apply, *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77,

93 (2d Cir. 2005), issue preclusion, sometimes referred to as collateral

estoppel, "will preclude a federal court from deciding an issue if (1) the

issue in question was actually and necessarily decided in a prior

proceeding, and (2) the party against whom the doctrine is asserted had a

full and fair opportunity to litigate the issue in the first proceeding."

*McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (quotation marks omitted).

In this case, although plaintiff asserted in his Article 78 petition that defendant Fischer violated his due process rights, he also asserted a violation of New York State statutory law. *See* Dkt. No. 40-4 at 4 ("The failure of the hearing officer to make a[n] inquiry to if the petitioner was advise[d] of his right to attend and the consequence[s] violates petitioner['s] rights to due process of law and violated DOCS Regulations 7 NYCRR 254.6(a)."). It is not clear whether plaintiff intended to assert a due process claim in the Article 78 proceeding under New York State law, federal law, or both. What is clear from Justice Leone's decision, however, is that he only analyzed and decided plaintiff's claims under state law. More specifically, all of the cases cited by Justice Leone reference or rely on New York State statutory or common law.[5] Dkt. No. 40-6 at 3-4.

---

[5]     Justice Leone cited *Matter of Rush v. Goord*, 2 A.D.3d 1185, 1186 (3d Dep't 2003), for the proposition that, "in order for an inmate to make a knowing, voluntary and intelligent waiver of [his right to attend a disciplinary hearing], he . . . must be informed of that right and of the consequences of failing to appear at the hearing[.]" Dkt. No. 40-6 at 3 (quotation marks, alterations omitted). This point of law regarding the validity of an inmate's waiver of his right to attend a disciplinary hearing under New York State law finds its roots in a decision issued by the New York State Court of Appeals in a criminal case. *Parker v. People*, 57 N.Y.2d 136, 141 (1982). In *Parker*, the Court of Appeals examined the validity of a criminal defendant's waiver to attend his criminal trial. *Parker*, 57 N.Y.2d at 138. Relying on the Supreme Court's decisions in *Schneckloth v. Bustamonte*, 412 U.S. 28 (1973), and *Brady v. United States*, 397 U.S. 742 (1969), the Court of Appeals held that, "to effect a voluntary, knowing and intelligent waiver, the defendant must, at a minimum, be informed in some manner of

Plaintiff's due process claim in this case, asserted pursuant to 42 U.S.C. § 1983, is governed by federal law, not state law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of [section] 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States.*" (emphasis added)); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 is premised upon a showing. . . that the defendant has denied the plaintiff a constitutional or *federal* statutory right[.]" (emphasis added)). As will be discussed more completely below, *see* Part III.C., *post*, unlike New York State law, the due process clause of the Fourteenth Amendment to the United States Constitution does not require that an inmate be informed of his right to attend a disciplinary proceeding and the consequences of failing to do so in order to find a knowing and voluntary waiver of that right.

the nature of the right to be present at trial and the consequences of failing to appear for trial[.]" *Id.* at 141 (citations omitted). Without explanation, the New York State Supreme Court, Appellate Division, Second Department, applied *Parker*'s holding regarding the validity of a criminal defendant's waiver to attend his trial to the prison setting. *See Mallard v. Dalsheim*, 97 A.D.2d 545, 546 (2d Dep't 1983) ("In order for an inmate to knowingly and voluntarily waive his rights to be present at the hearing, he must be informed of that right and of the consequences of failing to appear at the proceeding[.]" (citations omitted)). Thereafter, in 1990, the Third Department relied on *Mallard* in determining the validity of an inmate's waiver to attend a disciplinary hearing in *Al Jihad v. Mann*, 159 A.D.2d 914, 915 (3d Dep't 1990). *Al Jihad* is cited by the Third Department in *Rush*, the case relied upon by Justice Leone. Accordingly, New York State courts have applied the law regarding the validity of a criminal defendant's waiver to attend his trial when determining whether an inmate's waiver to attend a disciplinary hearing is valid.

Because I find that Justice Leone did not decide whether plaintiff's rights under federal law were violated, his decision does not have preclusive effect in this action, where plaintiff seeks relief for an alleged violation of his rights under the United States Constitution. *See Roucchio v. Coughlin*, 923 F. Supp. 360, 378 (E.D.N.Y. 1996) (concluding that issue preclusion did not apply where the Article 78 court did not base its determination on federal law and plaintiff's due process claim in federal court was commenced pursuant to section 1983).

C.    Due Process

Plaintiff's only cause of action in this case arises from the disciplinary hearing conducted by defendant Wolczyk on May 10-11, 2010. *See generally* Dkt. No. 1. Plaintiff alleges that he was denied procedural due process under the Fourteenth Amendment when defendant Wolczyk "failed to make [an] inquiry [in]to whether plaintiff was advised of his right to attend his hearing and the consequences of [the] failure to do so." *Id.* at 4. In support of their motion, defendants contend that plaintiff was afforded all of the procedural due process afforded under the Constitution. Dkt. No. 40-10 at 10-12.

Under the Fourteenth Amendment, a prison inmate who is deprived

of a protected liberty interest must be afforded due process of law.[6] *Tellier*

*v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d

653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir.

1996). The procedural safeguards to which a prison inmate is entitled

before being deprived of a constitutionally cognizable liberty interest are

well-established, and include (1) written notice of the charges to the

inmate; (2) the opportunity to appear at a disciplinary hearing and a

reasonable opportunity to present witnesses and evidence in support of

his defense, subject to a prison facility's legitimate safety and penological

concerns; (3) a written statement by the hearing officer explaining his

decision and the reasons for the action being taken; and (4) in some

circumstances, the right to assistance in preparing a defense. *Wolff v.*

*McDonnell*, 418 U.S. 539, 564-69 (1974); *see also Luna v. Pico,* 356 F.3d

481, 487 (2d Cir. 2004). To pass muster under the Fourteenth

Amendment, a hearing officer's disciplinary determination must garner the

---

[6]     The parties appear to be in agreement that, as a result of the penalty imposed
by defendant Wolczyk following plaintiff's disciplinary hearing, plaintiff served 334 days
in SHU confinement. Dkt. No. 1 at 7; Dkt. No. 40-10 at 6. Accordingly the first element
of a procedural due process claim, requiring that a plaintiff be deprived a protected
liberty interest, is satisfied. *See Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000)
(finding that, even under normal SHU conditions, confinement for more than 305 days
implicates a prisoner's liberty interests); *accord*, *Palmer v. Richards*, 364 F.3d 60, 65
(2d Cir. 2004).

support of at least "some evidence." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985); *Luna,* 356 F.3d at 487-88.

In this case, plaintiff's allegations implicate the second *Wolff* requirement that he be afforded an opportunity to appear at his disciplinary hearing and present a defense. Dkt. No. 1 at 4. Liberally construing plaintiff's papers submitted in connection with this action, it appears that he relies on 7 N.Y.C.R.R. § 254.6 and Justice Leone's decision in the Article 78 proceeding to support his due process claim pursuant to section 1983. *Id.*; Dkt. No. 48 at 3; Dkt. No. 48-1 at 11-12. As was discussed above, Justice Leone's decision granting plaintiff's Article 78 petition has no preclusive effect on this court because it is based on state law. *See* Part III.B., *ante.* In addition, plaintiff's reliance on a New York State statute to establish a due process violation under the United States Constitution is misplaced. "It is well-established that a violation of a state regulation [like 7 N.Y.C.R.R. § 254.6], in and of itself, does not give rise to liability under [section] 1983." *Hernandez v. Selsky*, No. 04-CV-0552, 2006 WL 566476, at *4 (N.D.N.Y. Mar. 7, 2006) (Kahn, J. *adopting report and recommendation by* Lowe, M.J.);[7] *see also Harmon v. Escrow*, No. 08-CV-6381, 2012 WL 3560812, at *4 (W.D.N.Y. Aug. 16, 2012) ("[E]ven

---

[7]   All unreported cases cited to in this report have appended for the convenience of the *pro se* plaintiff.

assuming that a state regulatory violation did occur [at the plaintiff's disciplinary hearing], it would have no bearing on the outcome [as to whether the plaintiff's due process rights had been violated at the hearing]."); *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009) ("[A] violation of New York State regulations concerning prison disciplinary hearings does not in itself establish a due process violation.").

For similar reasons, it is immaterial to this action that New York State law requires that an inmate be informed of the right to attend a disciplinary hearing and the consequences of failing to do so in order to knowingly and voluntarily waive that right because there is no such requirement for an effective waiver under the federal Constitution. *See Willey v. Kirkpatrick*, No. 07-CV-6484, 2013 WL 434188, at *5-6 (W.D.N.Y. Feb. 4, 2013) (citing 7 N.Y.C.R.R. § 254.6, the court held that "New York has provided inmates with a procedural safeguard at their disciplinary hearings – the right to be personally present – above and beyond that which is required by the federal Constitution"); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 379-80 (N.D.N.Y. 2010) (Hurd, J.) (finding that the plaintiff waived his right to attend a disciplinary hearing where the evidence demonstrated that (1) the plaintiff refused to attend, (2) the plaintiff refused to sign the form informing him that the hearing would be held in absentia,

and (3) there was no evidence that the plaintiff's failure to appear was the fault of prison officials); *Benitez v. Locastro*, No. 04-CV-0423, 2010 WL 419999, at *17 (N.D.N.Y. Jan. 29, 2010) (Mordue, J., *adopting report and recommendation by* Treece, M.J.) ("Plaintiff has offered no legal support for his conclusion that a hearing officer is required to personally interview an inmate in order to assure the voluntariness of his waiver of appearance, nor has the Court's research revealed any precedents supporting such conclusion."); *Dawes v. Leonardo*, 885 F. Supp. 375, 377-78 (N.D.N.Y. 1995) (Baer, J.) (holding that the "[p]laintiff may very well have a claim under [7 N.Y.C.R.R. § 254.6]," but he does not have an "actionable claim under [section] 1983" because "New York has simply provided inmates with a procedural safeguard in disciplinary hearings that is not required by the U.S. Constitution").

According to plaintiff's own statements, on the date of the disciplinary hearing, he was escorted to the hearing room and remained there briefly before voluntarily requesting to return to his cell before defendant Wolczyk arrived. Dkt. No. 48 at 2; Dkt. No. 40-5 at 24. In addition, at his deposition held in connection with this lawsuit, plaintiff testified that he frequently does not attend disciplinary hearings and understands that the hearings are conducted in his absence. Dkt. No. 40-3

at 7,8. It is undisputed that defendant Wolczyk, during the hearing on May 10-11, 2010, asked the escorting officers to return to plaintiff's cell to ask him whether he still wished his witness to testify. Dkt. No. 48-2 at 3. Finally, plaintiff does not allege that he was unaware that the hearing would be conducted in absentia or that he involuntarily waived his right to attend the hearing. In light of all of these facts, I find that no reasonable factfinder could conclude that plaintiff's waiver of his right to attend the disciplinary hearing was involuntary or that plaintiff was deprived his constitutional right to appear at the hearing and present a defense. Moreover, the record evidence demonstrates that plaintiff had at least constructive notice that the hearing was being held in his absence, rendering any allegation to the contrary unfounded. Accordingly, I recommend that plaintiff's due process claim be dismissed.

IV.    SUMMARY AND RECOMMENDATION

Although defendant Wolczyk's failure to specifically inform plaintiff of his right to attend the hearing and the consequences of failing to do so ran afoul of New York State law, that fact is not dispositive in this action where the court is asked to determine whether plaintiff's constitutional due process rights were violated. After a careful review of the record in this case, I find that, by requesting to return to his cell prior to the

commencement of the disciplinary hearing, plaintiff voluntarily waived his right to attend the proceeding.[8]

Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 40) be GRANTED and plaintiff's complaint be DISMISSED.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     August 18, 2014
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge

---

[8]     Because I recommend dismissal of plaintiff's complaint on the merits, I have not reached the issue of defendants' personal involvement in the deprivations alleged.



Not Reported in F.Supp.2d, 2006 WL 566476 (N.D.N.Y.)
**(Cite as: 2006 WL 566476 (N.D.N.Y.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Angel HERNANDEZ, Plaintiff,
v.
Donald SELSKY, Defendant.

No. 9:04-CV-0552.
March 7, 2006.

Angel Hernandez, Attica Correctional Facility, Attica, New York, Plaintiff, pro se.

Hon. Eliot L. Spitzer, Attorney General for the State of New York, The Capitol, Albany, New York, for Defendant.

Douglas J. Goglia, Assistant Attorney General, of counsel.

*DECISION AND ORDER*
KAHN, J.

**\*1** This matter comes before the Court following a Report-Recommendation filed on January 18, 2006, by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 23).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," Fed.R.Civ.P. 72(b), in compliance with L.R. 72.1. In the interval of at least fifteen days since the Magistrate Judge filed the subject Report-Recommendation, no objections to it have been raised. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. FN1

FN1. The Court notes three minor errors, however, in the Report-Recommendation. First, the citation for the case of *Straker v. Metro. Trans. Auth.* is incorrectly provided as 331 F.Supp.2d 91 (E.D.N.Y.2004). Report-Rec. (Dkt. No. 23) at 2 n. 3. The correct citation is 333 F.Supp.2d 91 (E.D.N.Y.2004). Second, the case of *Melo v. Coombe,* 97-CV-0204, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998) is cited in footnote 12. Report-Rec. (Dkt. No. 23) at 7 n. 12. The correct caption for that case is *Melo v. Combes.* Lastly, the case of *Vasquez v. Coughlin* is mis-cited as 726 F.Supp.2d 466 (S.D.N.Y.1989) in footnote 23 of the Report-Recommendation. Report-Rec. (Dkt. No. 23) at 13 n. 23. The correct citation is 726 F.Supp. 466 (S.D.N.Y.1989).

Accordingly, it is hereby

ORDERED, that the Report-Recommendation is APPROVED and ADOPTED in its ENTIRETY; and it is further

ORDERED, that Defendant's motion to dismiss (Dkt. No. 20) is GRANTED; and it is further

ORDERED, that Plaintiff's Complaint (Dkt. No. 1) is DISMISSED in its ENTIRETY; and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

IT IS SO ORDERED.

*REPORT-RECOMMENDATION*
LOWE, Magistrate J.

This action has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. § 636(b). Angel Hernandez ("Plaintiff") commenced this *pro se*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 566476 (N.D.N.Y.)
**(Cite as: 2006 WL 566476 (N.D.N.Y.))**

civil rights action against the Department of Correctional Services' Director of Special Housing and Inmate Discipline, Donald Selsky ("Defendant"), pursuant to 42 U.S.C. § 1983. (Dkt. No. 1.) Currently pending before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 20), which Plaintiff has opposed (Dkt. No. 22). For the reasons that follow, I recommend that Defendant's motion be granted.

I. STANDARD ON MOTION TO DISMISS

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To prevail on such a motion, the defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) [citations omitted].[FN1] A defendant may base this motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[FN2] or (2) a challenge to the legal cognizability of the claim.[FN3]

> FN1. *See also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") [internal quotation marks and citation omitted].

> FN2. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which

calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN3. *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a][2]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Mako's, Inc.,* 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8(a), and the other aimed at the legal sufficiency of the claims).

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[FN4] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47).[FN5] The purpose of this rule is to "facilitate a proper decision on the merits." *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) (quoting *Conley,* 355 U.S. at 48). A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion).[FN6]

FN4. *See Swierkiewicz* 534 U.S. at 511-512, 515.

FN5. *See also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

FN6. Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to

show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ); *U.S. v. Casado,* 303 F.3d 440, 449 n. 5 (2d Cir.2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry,* 927 F.2d 593 [2d Cir.1991] ); *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 114 (2d Cir.2002) (citing, for similar purpose, unpublished table opinion of *Zitz v. Pereira,* 225 F.3d 646 [2d Cir.2000] ); *John Hancock Life Ins. Co. v. Wilson,* 254 F.3d 48, 57 (2d Cir.2001) (citing, for similar purpose, unpublished table opinion of *Herman Miller, Inc. v. Worth Capitol,* 173 F.3d 844 [2d Cir.1999] ); *Bayway Ref. Co. v. Oxygenated Mktg. & Trading A.G.,* 215 F.3d 219, 226 (2d Cir.2000) (citing, for similar purpose, unpublished table opinion of *St. Charles Cable TV, Inc. v. Eagle Comtronics, Inc.,* 895 F.2d 1410 [2d Cir.1989] ); *Name.Space, Inc. v. Network Solutions, Inc.,* 202 F.3d 573, 586 (2d Cir.2000) (citing, for similar purpose, unpublished table opinion of *Planned Parenthood Fed'n of Am. v. Bucci,* 152 F.3d 920 [2d Cir.1998] )

**\*2** The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513-514 (2002) (noting that " Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003); *see, e.g., Dura Pharm.,* 125 S.Ct. at 1634-1635 (pleading did

not meet Rule 8[a][2]'s liberal requirement); *accord, Christopher v. Harbury,* 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). FN7

> FN7. Several other decisions exist from the Second Circuit affirming the Rule 12(b)(6) dismissal of a complaint due to its insufficiency under Rule 8(a)(2) after *Swierkiewicz. See, e.g., Johnson v. U.S.,* No. 03-6054, 2003 WL 22849896, at *1 (2d Cir. Dec. 2, 2003) (relying on pre-*Swierkiewicz* decision by the Second Circuit applying Rule 8[a] and Rule 12[b][6] ); *Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, I cite them because they clearly acknowledge the continued precedential effect, after *Swierkiewicz,* of cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]. "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se." Hernandez,* 18 F.3d at 136 [citation omitted].FN8 Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation marks and citation omitted].FN9

> FN8. *See also Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (affirming dismissal under Rule 12[b][6] ) (internal quotations and citation omitted).

> FN9. Of course, the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) [citations omitted], *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

Finally, when addressing a *pro se* complaint, a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).FN10 Of course, an opportunity to replead should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile because the problem with plaintiff's cause of action was substantive) [internal quotation marks and citation omitted]; *see also Cortec Indu., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal with prejudice) [citation omitted].

> FN10. *See also* Fed.R.Civ.P. 15(a) (leave

to amend "shall be freely given when
justice so requires").

## II. PLAINTIFF'S COMPLAINT

Liberally construed, Plaintiff's Complaint al-
leges that Defendant violated 42 U.S.C. § 1983 by
depriving Plaintiff of his rights "secured by the
Constitution and laws" when, on March 10, 2003,
Defendant affirmed on administrative appeal
Plaintiff's January 8, 2003, disciplinary hearing
conviction at Clinton Correctional Facility (for us-
ing controlled substances) without first reviewing
either an audio recording or a complete transcript of
the disciplinary hearing. (Dkt. No. 1, Part 1, ¶¶ 3.a.,
3.b., 6.A., 6.E., 6.G., 6.I.-6.P., 7 [Plf.'s Compl.];
Dkt. No. 1, Parts 1-3 [Exs. 1-3 and 6-11 to Plf.'s
Compl.].)

**\*3** Although Plaintiff's Complaint contains no
other express theory of liability against Defendant,
his papers in opposition to Defendant's motion to
dismiss assert that Defendant, by failing to super-
vise and/or train the disciplinary hearing officer,
caused the alleged defects in Plaintiff's disciplinary
hearing. (Dkt. No. 22 at 3, 5, 13 [Plf.'s Opp. Pa-
pers].) Because of my duty to liberally construe a
*pro se* civil rights plaintiff's pleadings,[FN11] my
duty to consider such a plaintiff's complaint as in-
cluding the assertions contained in his papers filed
in opposition to a motion to dismiss (to the extent
those assertions are consistent with the allegations
in the plaintiff's complaint),[FN12] and the relatively
early stage of this proceeding,[FN13] I liberally con-
strue Plaintiff's Complaint as also alleging (or at-
tempting to allege) this theory of supervisory liabil-
ity against Defendant.

FN11. *See Herandez,* 18 F.3d at 136; *Cruz,*
202 F.3d at 597.

FN12. "Generally, a court may not look
outside the pleadings when reviewing a
Rule 12(b)(6) motion to dismiss. However,
the mandate to read the papers of *pro se*
litigants generously makes it appropriate to
consider plaintiff's additional materials."

*Gadson v. Goord,* 96 Civ. 7544, 1997 WL
714878, at \*1, n. 2 (S.D.N.Y. Nov. 17,
1997). Clearly, such additional materials
can include a plaintiff's papers opposing a
defendant's motion to dismiss. *See Gil v.
Mooney,* 824 F.2d 192, 195 (2d Cir.1987)
(considering plaintiff's response affidavit
on motion to dismiss); *Fox v. City of New
York,* 03 Civ. 2268, 2004 WL 856299, at
\*1 (S.D.N.Y. Apr. 20, 2004) (considering
plaintiff's response papers-and "any other
documents which are referenced in his pa-
pers"-on motion to dismiss); *Wagnoon v.
Johnson,* 02 Civ. 10282, 2003 WL
22384770, at \*1 (S.D.N.Y. Oct. 30, 2003)
(considering plaintiff's response briefs on
motion to dismiss); *Johnson v. Wright,* 234
F.Supp.2d 352, 356 (S.D.N.Y.2002)
(considering plaintiff's response briefs on
motion to dismiss); *Pritchett v. Artuz,* 99
Civ 3937, 2000 WL 4157, at \*1 & n. 2
(S.D.N.Y. Jan. 3, 2000) (consider
plaintiff's response memorandum on mo-
tion to dismiss); *George v. Lorenzo,* 98
Civ. 0769, 1999 WL 397473, at \*1 & n. 1
(S.D.N.Y. June 15, 1999) (considering
plaintiff's reply papers on motion to dis-
miss); *Burgess v. Goord,* No.98 Civ.2077,
1999 WL 33458, at \*1 n. 1 (S.D .N.Y. Jan.
26, 1999) (considering plaintiff's response
memorandum on motion to dismiss); *Melo
v. Coombe,* 97-CV-0204, 1998 WL 67667,
at \*1 (S.D.N.Y. Feb. 18, 1998)
(considering plaintiff's response papers on
motion to dismiss); *Gadson,* 1997 WL
714878 at \*1, n. 2 (considering plaintiff's
response memorandum on motion to dis-
miss); *Drake v. Delta Airlines, Inc.,* 923
F.Supp. 387, 389 (E.D.N.Y.1996)
(considering plaintiff's response memor-
andum on motion to dismiss), *vacated in
part on other grounds,* 147 F.3d 169 (2d
Cir.1998); *Alexander v. Coughlin,* 90 Civ.
3231, 1991 WL 150674, at \*1 (E.D.N.Y.
July 26, 1991) (considering plaintiff's op-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2006 WL 566476 (N.D.N.Y.)
**(Cite as: 2006 WL 566476 (N.D.N.Y.))**

position papers on motion to dismiss); *Langert v. Festa,* 563 F.Supp. 692, 696 (E.D.N.Y.1983) (considering plaintiff's response memorandum on motion to dismiss).

FN13. I note that no Answer has yet been filed in this action.

## III. DEFENDANT'S ARGUMENT

Defendant argues that Plaintiff's Complaint should be dismissed for two reasons. First, Plaintiff did not have a right under the "Constitution and laws" to have a tape recording or transcript of his disciplinary hearing considered on appeal (or even made in the first place). (Dkt. No. 20, Part 2 at 9-16 [Def.'s Mem. of Law].) Second, Defendant is protected by qualified immunity. (Dkt. No. 20, Part 2 at 16-17 [Def.'s Mem. of Law].)

Liberally construed, Plaintiff's papers in opposition to Defendant's motion address each of these two arguments. First, Plaintiff argues that he has a right under the Due Process Clause of the Fourteenth Amendment and/or under 7 N.Y.C.R.R. § 254.8 (which sets forth the procedure for appealing a disciplinary conviction) to have a tape recording or transcript of his disciplinary hearing made and considered on administrative appeal. (Dkt. No. 22 at 1, 12 [Plf.'s Opp. Papers].) Second, Plaintiff argues that Defendant is not protected by qualified immunity because, as a supervisor of the disciplinary hearing officer, Defendant is liable for that hearing officer's failures during Plaintiff's disciplinary hearing, citing *Turpin v. Mailet,* 619 F.2d 196, 202 (2d Cir.1980). (Dkt. No. 22 at 3, 5, 13 [Plf.'s Opp. Papers].)

## IV. DISCUSSION

**A. Whether Plaintiff Had a Right Under the "Constitution and Laws" to Have a Tape Recording or Transcript of His Disciplinary Hearing Considered on Administrative Appeal**

I agree with Defendant that Plaintiff had no

right under the "Constitution and laws" to have a tape recording or transcript of his disciplinary hearing considered during his administrative appeal or his disciplinary conviction.

As Defendant correctly points out, courts have repeatedly held that the Fourteenth Amendment does not require *any* administrative review of disciplinary convictions.[FN14] Moreover, courts have repeatedly held that, where such administrative review is conducted, the Fourteenth Amendment does not require the review of (much less the existence of) a tape recording or transcript of the disciplinary hearing.[FN15] Rather, all that is required by the U.S. Constitution is the existence of "some evidence in the record" in support of the disciplinary conviction.[FN16] Here, even liberally construed, Plaintiff's Complaint acknowledges the existence of at least "some evidence" in support of his disciplinary conviction.[FN17]

FN14. *See, e.g., Wolf v. McDonnell,* 418 U.S. 539, 563-570 (1974) (not listing right to appeal among due process requirements of disciplinary hearing), *accord, Sira v. Morton,* 380 F.3d 57, 69 (2d Cir.2004); *Amato v. Ward,* 41 N.Y.2d 469, 473, 393 N.Y.S.2d 934, 937 (N.Y.1977) ("This type of administrative review [of prison disciplinary hearings pursuant to New York State regulations] is not required by the Federal Constitution.") (citing *Wolf v. McDonnell* ), *accord, Giovanni v. Lynn,* 48 F.3d 908, 911 n. 7 (5th Cir.1995) ("Nor, indeed, is provision for appeal, following an [otherwise] adequate [disciplinary] hearing, required under the more stringent standards of *Wolf v. McDonnell* ....").

FN15. *See, e.g., Dixon v. Goord,* 224 F.Supp.2d 739, 744 (S.D.N.Y.2002) ("According to *Wolff,* the only written or audio record of a disciplinary hearing that must be maintained to comply with minimal due process standards is a written statement describing the evidence relied upon

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

and the reason for the determination.... The Court therefore agrees with Defendants that any alleged defect in the tape would not rise to the level of a constitutional violation."); *Cherry v. Selsky,* 99-CV-4636, 2000 U.S. Dist. LEXIS 9451, at *15-16 (S.D.N.Y. July 7, 2000) ("This allegation [that defendant failed to review the audio tape recording of the disciplinary hearing, prior to affirming the decision of the hearing officer], without more, is insufficient to state a claim for violation of a liberty interest."); *Afrika v. Selsky,* 750 F.Supp. 595, 600, 602 (S.D.N.Y.1990) (granting defendant's motion for summary judgment because, among other reasons, plaintiff had no liberty interest in the review of an audio tape of his disciplinary hearing as part of his administrative appeal, stating that "because both the hearing and review reached the minimal standards, [defendant] did not violate [plaintiff's] liberty interest in not being confined without due process"); *Brito v. Coughlin,* 88-CV-8064, 1989 WL 241718, at *2 (S.D.N.Y. July 31, 1989) ("[The due process clause] does not require, however, that a transcript be made or given to an inmate after a disciplinary hearing.").

FN16. *See Wolf,* 418 U.S. at 563-566; *Sira,* 380 F.3d at 69.

FN17. (Dkt. No. 1, Part 1, ¶ 6.E. [Plf.'s Compl., summarizing the evidence that the disciplinary hearing officer asserts he relied upon]; Dkt. No. 1, Part 2 [Ex. 2 to Plf.'s Compl., attaching a portion of the written disciplinary hearing decision, which details the evidence that the disciplinary hearing officer asserts he relied upon]; *see also* Dkt. No. 20, Part 4 at 4-5, 7-12 [Ex. A to Selsky Decl., attaching the remainder of the aforementioned written disciplinary hearing decision, and the doc-

uments referenced therein, all of which were incorporated into Plaintiff's Complaint by reference in that Complaint-for example at Dkt. No. 1, Part 1, ¶¶ 6.A., 6.E., etc.].)

**\*4** Nor does any New York State regulation create the right that Plaintiff claims in this action. As an initial matter, Plaintiff's reliance on 7 N.Y.C.R.R. § 254.8 is misplaced. That regulation nowhere explicitly, or implicitly, requires that either a tape recording or transcript be available and reviewed on administrative appeal. *See* 7 N.Y.C.R.R. § 254.8. Rather, Plaintiff should have relied on 7 N.Y.C.R.R. § 254.6, which expressly states that "[t]he entire [disciplinary] hearing must be electronically recorded." 7 N.Y.C.R.R. § 254.6(a)(2). In any event, two problems exist with relying on a violation of this regulation to state a claim under 42 U.S.C. § 1983.

First, just because a disciplinary hearing must be electronically recorded does not mean that the electronic recording must be reviewed on administrative appeal. Second, and more importantly, 7 N.Y.C.R.R. § 254.6 is merely a *state regulation,* not a *federal law*-the source of the rights protected by 42 U.S.C. § 1983. *See* 42 U.S.C. § 1983 (protecting persons from "deprivation[s] of any rights, privileges, or immunities secured by *the Constitution and laws"* ) (emphasis added).FN18 It is well established that a violation of a state regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983.FN19

FN18. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970) ( "The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the de-

fendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added).

FN19. (Dkt. No. 20, Part 2 at 10 [Def.'s Mem. of Law, citing cases in support of proposition].) *See Dixon,* 224 F.Supp.2d at 744 ("While New York State law requires that an electronic record of a disciplinary hearing be maintained, 7 N.Y.C.R.R. § 254(b), such a record is not constitutionally required."); *see also Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ....") (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

As a result, I recommend that Plaintiff's failure-to-review-a-tape-recording claim be dismissed.

B. Whether Defendant Is Protected by Qualified Immunity

Because I conclude that Plaintiff did not have a right under the "Constitution and laws" of the United States FN20 to have a tape recording or transcript of his disciplinary hearing considered on his administrative appeal, I need not reach the merits of Defendant's alternative argument that Plaintiff's Complaint should be dismissed because Defendant is protected by qualified immunity. However, I note that, if I were to reach the merits of that argument, I would agree with Defendant that, even if he committed the acts alleged in the Complaint, he did not violate a "clearly established statutory or constitutional right of which a reasonable person would have known" for the reasons stated in Defendant's Memorandum of Law and the for reasons stated above. (Dkt. No. 20, Part 2 at 16-17 [Def.'s Mem. of Law]; *see also, supra,* notes 14-19.)

FN20. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970) ( "The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added).

C. Whether Defendant Is Liable for the Alleged Constitutional Violations (Other than Those Regarding the Lack of a Tape Recording) Due to Defendant's Status as a Supervisor of Plaintiff's Hearing Officer

My evaluation of Defendant's two arguments in their Memorandum of Law does not end my analysis of this motion to dismiss, since (as explained above) I have liberally construed Plaintiff's Complaint as also alleging that Defendant, by failing to supervise and/or train Plaintiff's disciplinary hearing officer, caused the alleged defects in Plaintiff's disciplinary hearing.

After due consideration, I conclude that this allegation fails to state a claim. Setting aside the fact that Defendant would be protected by qualified immunity with respect to any right except a "clearly established statutory or constitutional right of which a reasonable person would have known," FN21 I find it beyond doubt that Plaintiff can prove

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

no set of facts in support of his claim that would entitle him to relief. The sole case Plaintiff cites in support of his implicit argument that he has stated a valid claim against Defendant as a supervisor (i.e., *Turpin v. Mailet,* 619 F .2d 196, 202 [2d Cir.1980] ) is clearly distinguishable.[FN22] More analogous to the instant case are the cases that specifically address the relatively common issue created (in prisoner civil rights cases) by Defendant Selsky's role as DOCS' Director of Special Housing and Inmate Discipline; these cases frame the issue as one concerning Mr. Selsky's *personal involvement* in the alleged underlying constitutional deprivation.[FN23] Such cases set forth the five categories of involvement that could subject a supervisor such as Mr. Selsky to liability: (1) direct participation in the constitutional deprivation; (2) failure to remedy a constitutional deprivation after learning of it; (3) creating a policy or custom under which constitutional deprivations occur, or ignoring the existence of such a policy or custom; (4) gross negligence in managing subordinates; or (5) exhibiting deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.[FN24]

> **FN21.** *See Young v. Selsky,* 41 F.3d 47, 54, 56 (2d Cir.1994) (stating that issue in action under 42 U.S.C. § 1983 against Defendant Selsky, who was supervisor and trainer of disciplinary hearing officers, was whether Selsky was entitled to qualified immunity, not absolute immunity); *Richardson v. Selsky,* 5 F.3d 616, 623-624 (2d Cir.1993) (holding that Defendant Selsky was protected by qualified immunity in action that was brought under 42 U.S.C. § 1983 and based on his review of the plaintiff's disciplinary hearing conviction).

> **FN22.** In *Taupin,* the Second Circuit held that the plaintiff stated a valid claim under 42 U.S.C. § 1983 against a supervisor (a city) in connection with an unlawful arrest he experienced because the plaintiff al-

leged that the unlawful arrest was the *second* such arrest he experienced (by city employees), thus permitting an inference that the city had an official policy that authorized, approved of, or encouraged the arrests. *Turpin,* 619 F.2d at 202. Here, Plaintiff has alleged that he experienced only *one* unlawful disciplinary conviction. (*See generally* Dkt. Nos. 1, 22 .) Granted, in reaching its conclusion, the Second Circuit stated, "[A] single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge." *Taupin,* 619 F.2d at 202 (citations omitted). However, I conclude that, as alleged, Plaintiff's disciplinary conviction does not fall into this category (e.g., "unusually brutal or egregious," "administered by a group of ... employees," "sufficiently out of the ordinary," etc.).

> **FN23.** *See, e.g., Durran v. Selsky,* 251 F.Supp.2d 1208, 1212-1213, 1215 (W.D.N.Y.2003) (granting motion for summary judgment brought by "supervisory defendants," including Defendant Selsky as Director of Special Housing, in action brought under 42 U.S.C. § 1983 concerning disciplinary hearing conviction and appeal therefrom); *Vasquez v. Coughlin,* 726 F.Supp.2d 466, 473-474 (S.D.N.Y.1989) (granting motion for summary judgment brought by "supervisory defendants," including Defendant Selsky as Director of Special Housing, in action brought under 42 U.S.C. § 1983 concerning disciplinary hearing conviction and appeal therefrom).

> **FN24.** *See, e.g., Durran,* 251 F.Supp.2d at

1212-1213.

**\*5** Here, I can imagine no set of facts, consistent with Plaintiff's Complaint (and response papers), that would inflate and shape Plaintiff's failure-to-supervise claim so that it would fit into one of these five categories. Specifically, I do not liberally construe Plaintiff's Complaint (and response papers) as alleging that Defendant "directly participated" in the alleged constitutional deprivations due to Defendant's having affirmed Plaintiff's disciplinary hearing conviction.FN25 Nor do I liberally construe Plaintiff's Complaint (and response papers) as alleging that Defendant "failed to remedy" a constitutional deprivation after learning of it.FN26 (I note that, as described above, the absence of a hearing tape is not a constitutional deprivation.) Nor do I liberally construe Plaintiff's Complaint (and response papers) as alleging that Defendant created or ignored any sort of "policy or custom" under which the alleged constitutional deprivations occurred, or that such a policy or custom even existed.FN27 Nor do I liberally construe Plaintiff's Complaint (and response papers) as alleging that Defendant exhibited "deliberate indifference" to Plaintiff's rights by failing to act on information indicating that the alleged constitutional deprivations were occurring.FN28 (Again, I note that the absence of a hearing tape is not a constitutional deprivation.)

FN25. (Dkt. No. 22 at 3, 5, 13 [Plf.'s Opp. Papers] [not asserting that Defendant was liable for having affirmed Plaintiff's disciplinary hearing conviction]; Dkt. No. 22 at 13 [Plf.'s Opp. Papers] [appearing to acknowledge that Defendant "was not directly involved" in Plaintiff's disciplinary hearing].)

FN26. (Dkt. No. 22 at 5 [Plf.'s Opp. Papers] [asserting merely that "It is reasonable to infer that Defendant Selksy did know-or that a reasonable person in his *situation would have know that the hearing tape was no good to *reviewed."* ]

[typographical errors in original] )

FN27. (Dkt. No. 22 at 3, 5, 13 [Plf.'s Opp. Papers] [nowhere using the words "policy or custom" or alleging a pattern of alleged constitutional deprivations by Defendant against Plaintiff or anyone].)

FN28. (Dkt. No. 22 at 3, 5, 13 [Plf.'s Opp. Papers] [nowhere alleging such a state of mind or even indicating that Defendant was made aware of any conduct that subsequently was deemed to constitute a "constitutional violation"]; Dkt. No. 1 at ¶ 6.G [Plf.'s Compl .] [acknowledging that Defendant "reviewed" Plaintiff's disciplinary hearing conviction].)

Rather, I liberally construe Plaintiff's Complaint (and response papers) as alleging that Defendant was "personally involved" in the alleged constitutional violations by being "grossly negligent" in the managing of Plaintiff's disciplinary hearing officer, i.e., Chief Hearing Officer Diown.FN29 However, there are two problems with this claim. First, there is a conspicuous omission of factually specific allegations in Plaintiff's papers concerning the alleged inadequacies of Defendant's training and/or managing of Chief Hearing Officer Diown.FN30 Second, Plaintiff actually acknowledges that "Defendant ... closely supervises his subordinates."FN31 As a result, all that remains, in my view, is either an uncognizable allegation of supervisory liability or an utterly conclusory allegation that Defendant was personally involved in the alleged constitutional deprivations, which is insufficient to state a claim.FN52

FN29. (Dkt. No. 22 at 5 [Plf.'s Opp. Papers] [citing a case for the proposition that "official's may be held liable for * *'adequately training'* or supervising their employee's."] [typographical errors in original]; Dkt. No. 3, 5, 13 [repeatedly alleging that Defendant is liable because he is a "supervisor" of those who conduct dis-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

ciplinary hearings].)

FN30. (Dkt. No. 22 at 3, 5, 13 [Plf.'s Opp. Papers] [nowhere alleging that Defendant failed to manage or train Plaintiff's disciplinary hearing officer].)

FN31. (Dkt. No. 22 at 5 [Plf.'s Opp. Papers].)

FN32. *See Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987) (reversing denial of motion to dismiss for failure to state claim where complaint merely alleged in conclusory language that defendant failed to adequately train or supervise the officers involved); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *44 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (recommending that defendant's motion to dismiss be granted because, among other reasons, plaintiff's "bald assertion" that Defendant Rosado was personally involved in alleged retaliation against plaintiff was "wholly conclusory"); *Atkins v. Goord,* 01-CV-0057, 2002 U.S. Dist. LEXIS 19907, at *5-6 (N.D.N.Y. March 20, 2002) (Sharpe, M.J.) (recommending that defendant's motion to dismiss be granted because plaintiff alleged conclusorily that defendant was personally involved in the alleged constitutional deprivations due to the fact that he had the "overall responsibility" for all the correctional facilities within DOCS); *Daniels v. Jennings,* 97-CV-0681, 1998 U .S. Dist. LEXIS 3850, at *4 (N.D.N.Y. March 26, 1998) (Pooler, D.J.) (granting motion to dismiss where plaintiff failed to allege "sufficient evidentiary facts" in support of his conclusory claim that defendants were personally involved in the alleged constitutional deprivations because they were "responsible for the behavior and repremand [sic] of the officers involved"); *Pravda v.. City of Albany, N.Y.,* 956 F.Supp. 174, 182

(N.D.N.Y.1997) (Scullin, D.J.) (granting defendants' motion for judgment on pleadings, where *pro se* plaintiff's "conclusory allegations" that county jail superintendent and county sheriff were responsible for supervising corrections officers involved in abuse were "insufficient to establish the personal involvement of these individual Defendants in Plaintiff's alleged constitutional deprivations.").

As a result, I recommend that Plaintiff's failure-to-supervise claim also be dismissed. I note that the Court has the authority to dismiss this claim *sua sponte,* under the Federal Rules of Civil Procedure. *See, e.g.,* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). In addition, I note that Defendant did not have an opportunity to move to dismiss this claim since Defendant did not have notice of this claim until *after* he had finished briefing his motion to dismiss (when I found the claim mentioned in Plaintiff's Reply papers).

**\*6** ACCORDINGLY, it is

RECOMMENDED that Defendant's motion to dismiss (Dkt. No. 20) be GRANTED; and it is further

RECOMMENDED that Plaintiff's Complaint be DISMISSED in its entirety; and it is further

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Hu-*

Not Reported in F.Supp.2d, 2006 WL 566476 (N.D.N.Y.)
**(Cite as: 2006 WL 566476 (N.D.N.Y.))**

*man Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C.
§ 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2006.
Hernandez v. Selsky
Not Reported in F.Supp.2d, 2006 WL 566476
(N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 3560812 (W.D.N.Y.)
**(Cite as: 2012 WL 3560812 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Kalvin HARMON, Plaintiff,
v.
James ESCROW, Defendant.

No. 08–CV–6381–CJS.
Aug. 16, 2012.

Kalvin Harmon, Wappinger Falls, NY, pro se.

Derrick J. Robinson, A.A.G., New York State Attorney General's Office, Mineola, NY, for Defendant.

DECISION and ORDER
CHARLES J. SIRAGUSA, District Judge.
**INTRODUCTION**
***1** Siragusa, J. This is an action brought pursuant to 42 U.S.C. § 1983 by *pro se* Plaintiff Kalvin Harmon ("Harmon"), who claims that his exclusion from a Tier III Disciplinary Hearing violated his right to due process as guaranteed by the Fifth and Fourteenth Amendments. Presently before the Court is Defendant James Escrow's ("Escrow") (named in the complaint incorrectly as "Escrow") motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, Escrow's motion is granted.

**BACKGROUND**
The undisputed facts are as follows: On August 12, 2007, Plaintiff was issued an Inmate Misbehavior Report, relating to an incident that occurred that same day, charging him with assault on staff, violent conduct, interference with an employee, refusing a direct order, and refusing a search or frisk. As a result, a Tier III Disciplinary Hearing was conducted on August 17, 2007. Escrow was designated by the Superintendent to conduct the hearing.

According to the hearing transcript, ECF No. 36–3, and the audio recording of the hearing, ECF No. 36–2, Harmon was instructed by Escrow, at the beginning of the hearing, that if he wished to make any objections, he should do so in a timely fashion. Harmon was further instructed to refrain from speaking while others were speaking.

The portion of the hearing at issue consists of the following exchange between Harmon and Escrow with regard to a witness then testifying:

Harmon: Excuse me, I have questions.

Escrow: What questions do you have?

Harmon: I would like you to ask my uh, uh, uh ... first off I object ...

Escrow: Questions, do you have questions?

Harmon: I didn't receive any assist ...

Escrow: Do you have questions you want me to ask this man?

Harmon: You're cutting me off, you're cutting me off ...

Escrow: Yes I am. Do you have questions for him? You will have an opport..........

Harmon: .........

Escrow: Don't talk over me or I am going to have you removed from the room.

Harmon: No, no.

Escrow: Don't talk over me or I am going to have you removed from the room and I will continue in your absence .....

Harmon: .........

Escrow: Last chance, last chance.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Harmon: But you're not letting me speak.

Audio Recording of Tier III Disciplinary Hr'g, ECF No. 36–2, and Tr. Of Tier III Disciplinary Hr'g, ECF No. 36–3, at 5–6.

This back and forth exchange between Harmon and Escrow continued until Escrow ultimately had Harmon removed form the hearing for disruptive behavior. The hearing then proceeded without Harmon. In his absence, Escrow entered a not guilty plea on Harmon's behalf to all charges. Escrow also made a determination on the record that Harmon did have adequate opportunity for meaningful assistance through the selection of Jeff Bradshaw, Vocational Instructor, as an assistant. Additionally, prior to the hearing, Harmon received advanced written notice of the formal charge by means of the misbehavior report. At the conclusion of the hearing, Escrow found Harmon guilty of all charges. Harmon then appealed. On November 26, 2007, the hearing disposition was reviewed and affirmed by Tim Votraw, Acting Director, Special Housing/Inmate Disciplinary Program.

**\*2** Escrow claims that due to Harmon's repeated interruptions at the hearing, he was removed for disruptive behavior. On the other hand, Harmon claims that he was not disruptive, rather he was merely making timely objections as previously instructed to do so by Escrow himself. Harmon further claims that being removed from the hearing was both a Fifth and Fourteenth Amendment violation of his right to due process and a violation of state regulation, N.Y. Comp.Codes R. & Regs. Titl. 7, § 254.6, which provides that "[t]he inmate shall be present at the hearing unless he or she refuses to attend, or is excluded for reasons of institutional safety or correctional goals."

In the motion presently before the Court, Escrow moves for dismissal under Rule 56 of the Federal Rules of Civil Procedure on the ground that Harmon has failed to prove a constitutional violation and, in the alternative, on the grounds of qualified immunity.

## STANDARD OF LAW

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir.2001); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893 (3d Cir.1987) (*en banc* ). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993); *Anderson,* 477 U.S. at 248–49; *Doe v. Dep't of Pub. Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir.2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946 (3d Cir.1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986). Rather, evidentiary proof in admissible form is required. Fed.R.Civ.P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

**\*3** Defendant's Notice of Motion included the following *Pro Se Notice:*

Plaintiff is hereby advised that the defendant has asked the Court to decide this case without a trial, based on written materials, including affidavits, submitted in support of the motion. THE CLAIMS PLAINTIFF ASSERTS IN HIS/HER COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF HE/SHE DOES NOT RESPOND TO THIS MOTION by filing his/her own sworn affidavits or other papers as required by Rule 56(e). An affidavit is a sworn statement of fact based on personal knowledge that would be admissible in evidence at trial.

In short, Rule 56 provides that plaintiff may NOT oppose summary judgment simply by relying upon the allegations in the complaint. Rather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial. Any witness statements, which may include plaintiff's own statements, must be in the form of affidavits. Plaintiff may file and serve affidavits that were prepared specifically in response to defendant's motion for summary judgment.

Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant. If plaintiff does not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without a trial.

Pursuant to Rules 7.1(e) and 56.1 of the Local Rules of Civil Procedure for the Western District of New York, plaintiff is required to file and serve the following papers in opposition to this motion: (1) a memorandum of law containing relevant factual and legal argument; (2) one or more affidavits in opposition to the motion; and (3) a separate, short, and concise statement of the material facts as to which plaintiff contends there exists a genuine issue to be tried, followed by citation to admissible evidence. In the absence of such a statement by plaintiff, all material facts set forth in defendant's statement of material facts not in dispute will be deemed admitted. A copy of the Local Rules to which reference has been made may be obtained from the Clerk's Office of the Court.

If plaintiff has any questions, he/she may direct them to the Pro Se Office.

Plaintiff must file and serve any supplemental affidavits or materials in opposition to defendant's motion no later than the date they are due as provided in Rule 56.1(e) of the Local Rules of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Civil Procedure for the Western District of New York.

Def.'s Notice of Motion at 2–3, Oct. 24, 2011, ECF No. 36. Inasmuch as Plaintiff is proceeding *pro se,* this Court is mindful that,

[w]hen considering motions to dismiss a *pro se* complaint such as this, "courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (internal quotation marks omitted). This is especially true when dealing with pro se complaints alleging civil rights violations. *See Weinstein v. Albright,* 261 F.3d 127, 132 (2d Cir.2001). Accordingly, the plaintiffs' allegations in this case must be read so as to "raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (internal quotation marks omitted).

**\*4** *Weikel v. Bd. of Educ. of N.Y.,* 287 F.3d 138, 145–146 (2d Cir.2002).

### DISCUSSION

Based on the foregoing facts, the Court finds that Harmon has failed to present any facts which would be sufficient to carry his burden of proof at trial. Harmon relies on New York regulation section 254.6, as well as case law from the New York State Supreme Court, to support his due process claim. Whether Escrow violated that regulation has not been adjudicated in the state courts.

However, even assuming that a state regulatory violation did occur, it would have no bearing on the outcome of this decision. It has been established "that a violation of a state regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." *Hernandez v. Selsky,* 9:04–CV–0552, 2006 WL 566476 (N. D.N.Y. Mar. 7, 2006). *See also, Doe v. Connecticut Dept. Of Child & Youth Services,* 911 F.2d 868, 869 (2d Cir.1990) (holding that a "violation of state law neither gives [plaintiffs] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper §

1983 claim.") (citing *Robinson v. Via,* 821 F.2d 913, 922 (2d Cir.1987)) (internal citations omitted); *Bogle v. Murphy,* 98–CV–6473 CJS, 2003 WL 22384792 (W.D.N.Y. Sept. 9, 2003) (stating that New York regulation section 254.6 does not create a constitutional due process right).

Moreover, "[p]rison inmates do not possess a constitutional right to be present during the testimony of witnesses during a disciplinary proceeding." *Francis v. Coughlin,* 891 F.2d 43, 48 (2d. Cir.1989); *see also, Hidalgo v. Hopin,* No. 01–CV–0057(SR), 2009 WL 4803689 (W.D.N.Y. Dec. 9, 2009) (stating that inmates do not have "a constitutional right to confront or cross-examine witnesses in prison disciplinary hearings.) (Citing *Wolff v. McDonnell,* 418 U.S. 539, 567–8 (1974); *Kalwasinksi v. Morse,* 201 F.3d 103, 109 (2d Cir.1999); *Silvia v. Casey,* 992 F.2d 20, 22 (2d Cir.1993)).

Accordingly, the Court finds that Harmon has failed to prove a constitutional violation; therefore, Escrow's motion is granted. Because the Court is dismissing the case for failure to prove a constitutional violation, it will not discuss Escrow's alternative grounds for relief: qualified immunity.

### CONCLUSION

In sum, Harmon has failed to present the Court with any genuine dispute of a material fact, while Escrow has established that he is entitled to judgment as a matter of law as a result of Harmon's failure to prove a constitutional violation. As such, Escrow's motion to for summary judgment is granted and the Clerk is directed to enter judgment for Defendant.

IT IS SO ORDERED.

W.D.N.Y.,2012.
Harmon v. Escrow
Not Reported in F.Supp.2d, 2012 WL 3560812 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 434188 (W.D.N.Y.)
**(Cite as: 2013 WL 434188 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Aaron WILLEY, Plaintiff,
v.
Robert KIRKPATRICK, et al., Defendants.

No. 07–CV–6484 (MAT).
Feb. 4, 2013.

Aaron Willey, Elmira, NY, pro se.

J. Richard Benitez, Nys Attorney General's Office, Rochester, NY, for Defendants.

**DECISION AND ORDER**
MICHAEL A. TELESCA, District Judge.
**I. Introduction**
**\*1** On October 4, 2007, *pro se* plaintiff Aaron Willey ("Willey" or "Plaintiff") instituted this action pursuant to 42 U.S.C. § 1983 against Defendants, alleging that they violated his constitutional rights while he was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). The Complaint alleges that Defendants acted "both individually and in concert," but does not allege any claims against them in their official capacities. The Complaint demands a "declaratory judgment stating that Defendants violated [Plaintiff's] constitutional rights," as well as compensatory and punitive damages. Plaintiff was granted permission to file an amended complaint (Dkt # 60), which is the operative pleading in this action.

Defendants Robert A. Kirkpatrick, M. Monahan, Martin Kearney, Scott Lambert, Taylor Roberts, M. Sztuk, A. Allessandro, M. Overhuff, and Tom Schoellkopf have moved for summary judgment dismissing the complaint pursuant to Federal Rules of Civil Procedure 56. Plaintiff has opposed the motion and renewed his request for the appointment of counsel.

For the reasons discussed herein, Defendants' motion for summary judgment is granted, and the amended complaint is dismissed.

**II. Background**

**A. The Parties**

At all relevant times, Plaintiff was housed at Wende Correctional Facility ("Wende"), and Defendants were all employed at Wende. Specifically, Robert Kirkpatrick ("Supt.Kirkpatrick") was Superintendent at Wende; M. Monahan ("DSS Monahan") was Deputy Superintendent for Security; Martin Kearney ("Capt.Kearney") was a Corrections Captain; Scott Lambert ("Sgt.Lambert") and Jeff Jeziorski ("Sgt.Jeziorski") were Corrections Sergeants; Taylor Roberts ("C.O.Roberts"), M. Sztuk ("Sztuk"), A. Allesandro ("C .O. Allesandro"), and M. Overhuff ("C.O.Overhuff") were Corrections Officers; and Tom Schoellkopf ("H.O.Schoellkopf") was a Hearing Officer.

**B. Factual Summary**

The recitation of facts below is drawn from the pleadings and discovery documents on file in this matter. The Court has viewed the facts in the light most favorable to Plaintiff, as the party opposing summary judgment. *See, e.g., United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party.).

**1. The October 2005 False Misbehavior Report for Possessing a Weapon**

On October 15, 2005, Sgt. Lambert and C.O. Roberts detained Willey and frisked him for no apparent reason. They brought him to a small room without a surveillance camera and questioned him about an inmate they suspected of smuggling con-

traband into Wende. Sgt. Lambert opened a desk drawer and pulled out what appeared to be a metal weapon and said that if he did not work with them as an informant, they would falsely charge him with possessing a weapon. Plaintiff refused to cooperate, stating that he did not have any knowledge of the alleged smuggling. Sgt. Lambert responded, "Have it your way," and brought Willey back to his cell.

**\*2** On October 17, 2005, while Willey was undergoing a pat-frisk before attending yard recreation, C.O. Roberts allegedly uncovered a flat piece of metal about four inches long and three-quarters of an inch wide secreted near his crotch area. C.O. Roberts issued a disciplinary report charging Plaintiff with Possession of a Weapon and Possession of Contraband (PR 110.13 and 110.23). Willey was subsequently found guilty at a disciplinary hearing, even though he was not given notice or an opportunity to appear at the hearing.

On appeal, the conviction was set aside and a new hearing was ordered. At the hearing before Capt. Kearney on December 28, 2005, Plaintiff alleges that he was denied the right to call inmate witnesses and was unjustly removed from the hearing. He states that Capt. Kearney threatened to "beat the shit out of" him and called him a "young punk." According to Capt. Kearney, Willey's removal from the hearing was warranted because he refused to stop interrupting Capt. Kearney and attempting to place irrelevant matters on the record. Capt. Kearney found Willey guilty of both charges, and imposed 180 days in the Special Housing Unit ("SHU"), 180 days of lost privileges, and 12 months recommended loss of good time credits. On appeal, the conviction was set aside by Special Housing Unit Director Donald Selsky ("SHU Director Selsky") on February 28, 2006.[FN1]

> FN1. On November 28, 2006, Plaintiff was charged criminally with Promoting Prison Contraband in the First Degree, based upon the false misbehavior report issued by C.O. Roberts in October 2005, regarding Plaintiff's possession of a shank-type

weapon. This charge was subsequently dismissed, however, by Alden Town Court Justice LaDuca.

**2. The November 2005 False Misbehavior Report**

On November 26, 2005, C.O. Sztuk and C.O. Allesandro escorted Willey to the shower. When Willey returned, he found that his cell had been "trashed"—the toilet had been flooded, and Willey's papers and belongings were strewn about his cell. When Willey asked C.O. Sztuk for a "search contraband slip," Sztuk replied, "You really like fucking with me." Willey responded, "What?" C.O. Sztuk said, "You heard me, keep fucking with me asshole and see what happens."

Inmates housed nearby confirmed that they had seen C.O. Sztuk carrying Willey's legal paperwork out of his cell after the cell search. Willey yelled out and asked to speak to an area supervisor. He was told to "give it a rest," to which he replied that he would not give it a rest because they had stolen his legal paperwork. At that point, C.O. Sztuk said, "What's that, Willey, you said you are going to shit us down (i.e., throw feces and/or urine on corrections officers)?" Willey denied saying anything like that.

Nevertheless, he was moved to the restricted side of the SHU where a Plexiglas shield was placed on his cell. C.O. Allesandro then turned off the water to Plaintiff's cell, so that he could not flush the toilet. As a result, feces and urine accumulated in the bowl and made the air in the cell noxious. Willey alleges that the area supervisor, Sgt. Jeziorski, failed to properly supervise C.O. Allessandro and C.O. Sztuk.

On or about November 28, 2005, C.O. Sztuk filed a false misbehavior report against Plaintiff, accusing him of threatening to "shit down" staff members. At the subsequent disciplinary hearing on December 7, 2005, before Susan Post (not a defendant in this action), Willey attempted to use videotape evidence to prove that he did not make such

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

threat. However, according to Willey, someone had tampered with the surveillance tape to remove the sound and destroy the picture quality. Willey was found guilty and sentenced to 90 days in the SHU. On appeal, the charge was affirmed by SHU Director Selsky.

### 3. The December 2005 False Misbehavior Report

*3 On December 18, 2005, Willey placed the garbage from his evening meal on his feed-up tray to be picked up. However, C.O. Overhuff refused to remove the refuse, and issued another false misbehavior report against Plaintiff for refusing a direct order (namely, to turn in his food tray) in violation of Prison Rule 106.10. According to C.O. Overhuff, he told Willey to hand him tray, and Willey instead began to break his garbage in pieces; C.O. Overhuff reiterated the order, and Willey again allegedly refused.

D.S.S. Monahan placed Willey on a pre-hearing restricted diet, and, on December 20, 2005, denied Willey's appeal of that decision.

At the disciplinary hearing conducted on January 10, 2006, with regard to the December 18, 2005 incident, H.O. Schoellkopf refused to allow Willey to question witnesses and ejected him from the hearing. According to Willey, H.O. Schoellkopf told him, "You are going to die in the SHU, you young punk." H.O. Schoellkopf found Willey guilty and sentenced him to 30 days in the SHU, 30 days of lost privileges and two months of recommended loss of good time credits. On February 28, 2006, the conviction was reversed on appeal by SHU Director Selsky, who found that Willey "was inappropriately removed from the hearing."

### 4. Harassment by Corrections Officers and Plaintiff's Suicide Attempt

Willey states that while he was housed in the SHU, he was subjected to continuous verbal harassment by numerous corrections officers, especially C.O. Allesandro. According to Willey, C.O. Allessandro made sexually harassing comments and, while Willey was showering, would stare at him

licking his lips and blowing kisses. As a result, Willey became severely depressed and attempted to overdose on ibuprofen on February 9, 2006. He was taken to Erie County Medical Center and, upon his return to Wende, was placed in an observation cell he describes as filthy and reeking of urine and feces. Willey was left there, naked, for fourteen days. At that point, he was involuntary committed to the Central New York Psychiatric Center, where he stayed for six months.

While there, Willey states that he was attacked by deranged, violent patients; strapped down to a gurney; and injected with potent psychotropic drugs against his will.

After his stint at the Psychiatric Center, he was returned to the Wende SHU.

### 5. The August 2006 False Misbehavior Report

On August 25, 2006, Willey received another misbehavior report for allegedly kicking a corrections officer while he was in restraints on February 10, 2006, the day after his suicide attempt. The issuing officer is not identified in the Complaint.

At the disciplinary hearing, H.O. Schoellkopf found Willey guilty and sentenced him to 180 days in the SHU. On September 17, 2006, Plaintiff wrote to Supt. Kirkpatrick regarding his continuing "false imprisonment" in SHU, claiming that he had done "nothing wrong." Willey also described the history of false misbehavior reports issued against him, beginning on October 15, 2005. Supt. Kirkpatrick responded that based on his review of the "hearing record packet and other related materials," he found "no reason to modify [the] disposition as rendered." Nevertheless, on appeal, SHU Director Selsky reduced the sentence in connection with the August 2006 misbehavior report.

### III. General Legal Principles

#### A. Summary Judgment Standard

*4 The standard for granting summary judgment is well established. Summary judgment may

not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). Where the non-moving party will bear the burden of proof at trial, the movant may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the initial burden has been met by the movant, the non-moving party is required demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is 'material' only if the fact has some effect on the outcome of the suit." *Catanzaro v. Weiden,* 140 F.3d 91, 93 (2d Cir.1998) (citing *Anderson,* 477 U.S. at 248). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

The court must draw all reasonable inferences, and resolve all ambiguities, in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previ-

ous deposition testimony." *Hayes v. New York City, Dept. of Corr.,* 84 F.3d 614, 619 (2d Cir.1996) (citations omitted).

Although a court must read a *pro se* litigant's papers liberally, interpreting them "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), when alleging a violation of a civil rights statute, even a *pro se* litigant must make "specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987).

**B. 42 U.S.C. § 1983**

To prevail in a Section 1983 action, a plaintiff must demonstrate that he has been denied a constitutional or federal statutory right and that the deprivation occurred under color of state law. 42 U.S.C. § 1983; *see also, e.g., West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996). Section 1983 itself, however, "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (citation omitted), *cert. denied,* 512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).

**\*5** "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). The personal involvement of a supervisory defendant may be shown by evidence that, *inter alia,* the "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong ... or ... the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) [FN2] (citing *Wright,* 21 F.3d at 501 (citing *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986))).

FN2. In *Colon,* the Second Circuit affirmed summary judgment for Commissioner of DOCCS and the facility superintendent on the grounds that, *inter alia,* the contents of the inmate's letters to them was not in the record and therefore the court did not know "whether the letter was one that reasonably should have prompted [defendants] to investigate." 58 F.3d at 873, 874 n. 8.

## IV. Analysis

## A. Issuance of False Misbehavior Reports in Retaliation For Plaintiff's Refusal to Act as an Informant

The filing of baseless or false charges against an inmate does not, in and of itself, give rise to a constitutional violation. *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986) (An inmate "has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest."). Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, the inmate must be able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. *See Freeman,* 808 F.2d at 951–53 (reasoning that the filing of false charges is not a constitutional violation, as long as the prisoner is granted a hearing and given an opportunity to rebut the charges); *Franco v. Kelly,* 854 F.2d 584, 589–90 (2d Cir.1988) (reversing grant of summary judgment where prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse).

Here, Willey has not alleged that the misbehavior reports were issued in retaliation for his exercise of a constitutionally protected right. However, the Complaint can be construed as alleging that certain defendants issued false misbehavior reports against Plaintiff and that the defendants acting as hearing officers denied him of due process at the related disciplinary hearings. *See* Complaint ¶ ¶ 19–22, 25–29, 45–48, 55–57, 69–70. In particular, Willey complains that both H.O. Kearney and H.O. Schoellkopf unlawfully ordered him removed from various disciplinary hearings stemming from the false misbehavior reports issued by C.O. Sztuk and C.O. Roberts.

Under New York State regulations, an inmate has the right to "be present at the hearing unless he refuses to attend, or is excluded for reason of institutional safety or correctional goals." N.Y. COMP.CODES R. & REGS., tit. 7, § 254.6. Although an inmate may bring a successful New York Civil Practice Law and Rules ("C.P.L.R.") Article 78 proceeding pursuant to this regulation, a claim under state law does not necessarily provide a viable due process claim under 42 U.S.C. § 1983.

**\*6** Here, New York has provided inmates with a procedural safeguard at their disciplinary hearings-the right to be personally present-above and beyond that which is required by the federal Constitution. *See Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (ruling that inmates accused of disciplinary violations be afforded certain procedures, including 24—hours notice, the right to call—but not necessarily to be present during the testimony of—witnesses, and an impartial tribunal); *Francis v. Coughlin,* 891 F.2d 43 (2d Cir.1989). "A procedural safeguard does not constitute a liberty interest[.]" *Dawes v. Leonardo,* 885 F.Supp. 375, 378 (N.D.N.Y.1995) (citing *Patterson v. Coughlin,* 761 F.2d 886, 892 (2d Cir.1985) (noting how the court below had "apparently confuse[d] the deprivation of a liberty interest with the denial of the constitutional right to procedural safeguards which is implicated by that interest"), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986)). "[W]here that safeguard is not required by the United States Constitution's Due Process Clause, its denial cannot constitute a violation of that clause[.]" *Id.* (citing *Patterson,* 761 F.2d at

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

892 (finding a section 1983 action permissible where the disciplinary hearing in question violated state procedural requirements simultaneously violated federal due process mandates)). Thus, although it was violative of Willey's state regulatory rights to be excluded from the hearing, his federal constitutional rights were not violated thereby. Accordingly, his retaliation claim premised on a subsequent federal due process violation must fail. *See, e.g., Livingston v. Kelly,* 561 F.Supp.2d 329, 331 (W.D.N.Y.2008) ("[A]n inmate's allegation that he has been found guilty of false disciplinary charges may support a constitutional claim if he also alleges that he was denied the minimum procedural due process protections guaranteed by the Fourteenth Amendment.") (citations omitted).

**B. Destruction of Personal Property**

Willey alleges that C.O. Sztuk and C.O. Allessandro stole legal documents from his cell, and destroyed his personal property (e.g., family photographs and letters). Under *Hudson v. Palmer,* 468 U.S. 517, 536, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), even the intentional destruction of an inmate's property by a prison officer does not violate the Due Process Clause if the state provides that inmate with an adequate post-deprivation remedy. While the loss of property is regrettable, and even though Willey has alleged that these defendants were personally responsible for the loss, he has not stated an actionable constitutional claim because New York state law provides him with an adequate post-deprivation remedy, i.e., § 9 of the Court of Claims Act. *Reyes v. Koehler,* 815 F.Supp. 109, 114 (S.D.N.Y.1993) (citing *Blum v. Koch,* 716 F.Supp. 754, 762 (S.D.N.Y.1989); *Friedman v. Young,* 702 F.Supp. 433, 437 (S.D.N.Y.1988); *DeYoung v. City of New York,* 607 F.Supp. 1040, 1042–43 (S.D.N.Y.1985)); *accord, e.g., Murchison v. Keane,* No. 94 Civ. 466 CSH, 2000 WL 489698, at *6 (S.D.N.Y. Apr.25, 2000) (citations omitted).

**C. Harassment**

**\*7** Willey alleges that C.O. Allessandro violated his constitutional rights by subjecting him to continuous harassment, which Willey describes as "psychological, emotional, verbal, and sexual." Willey states that C.O. Allesandro would bang on his cell and turn his light switch on and off rapidly. Also, Willey indicates that C.O. Allesandro would stare at him while he was showering and toweling off, and would make sexually suggestive comments. Willey does not claim that C.O. Allessandro physically touched him in a sexual manner, however.

"Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) (citing *Patton v. Przybylski,* 822 F.2d 697, 700 (7th Cir.1987) (derogatory remarks do not constitute a constitutional violation); *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989); *Oltarzewski v. Ruggiero,* 830 F.2d 136, 139 (9th Cir.1987); *Martin v. Sargent,* 780 F.2d 1334, 1338–39 (8th Cir.1985)). Willey has made no showing of uninvited physical or sexual contact, nor has he pled such a cause of action in his Complaint. C.O. Allesandro's annoying conduct and comments, unaccompanied by physical threats or attacks, do not amount to a constitutional violation under § 1983.

**D. Eighth Amendment Violation Based Upon Unsanitary Conditions**

Willey asserts that C.O. Sztuk and C.O. Allessandro violated his Eighth Amendment right to be free from cruel and unusual punishment by turning off the running water to his cell while the Plexiglas cell shield was in place between December 1, 2005, and January 10, 2006. At one point in the Complaint, Willey states that his drinking water and toilet water was shut off for "extensive lengths of time". Compl., ¶ 87 (Dkt # 1). In the next sentence, he states that his toilet water was shut off for "seven (7) days, forcing plaintiff to stay in a plexy glass shield (no air circulation) and breathe in air smelling of urine/feces...." *Id.*

In his response to interrogatories propounded

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

by Willey, C.O. Allessandro denied "purposely shut[ting] [his] toilet [sic] and water pressure off in between" December 1, 2005, and January 10, 2006. Dkt # 95 at 3, ¶ 9. However, Defendants failed to address this conditions-of-confinement claim in their motion for summary judgment.

"While the Eighth Amendment's prohibition against cruel and unusual punishment 'does not mandate comfortable prisons,' " *Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir.2001) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)), the conditions of confinement must be at least 'humane,' " *id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). An Eighth Amendment violation based upon living conditions requires the inmate to show (1) a deprivation that is "objectively, sufficiently serious" of "the minimal civilized measure of life's necessities," and (2) a "sufficiently culpable state of mind" on the part of the defendant official, such as deliberate indifference to inmate health or safety. *Gaston,* 249 F.3d at 164 (quoting *Farmer,* 511 U.S. at 834) (internal quotation marks omitted in *Gaston* ).

**\*8** A Section 1983 claim will not lie for prison conditions that are merely unpleasant,, but chronic exposure to human waste will give rise to a colorable claim. *See Gaston v. Coughlin,* 249 F.3d 165–66. In *Gaston,* the Second Circuit reinstated an inmate's Eighth Amendment claim against two defendants where the area in front of the inmate's cell "was filled with human feces, urine, and sewage water" for several consecutive days. The Second Circuit stated that it was "unwilling to adopt as a matter of law the principle that it is not cruel and unusual punishment for prison officials knowingly to allow an area to remain filled with sewage and excrement for days on end." *Id.* at 166. Similarly, in *LaReau v. MacDougall,* 473 F.2d 974, 977–79 (2d Cir.1972), the Second Circuit held that an inmate who spent five days in a cell that contained only a grate-covered hole in the floor for a toilet, which could only be flushed from the outside, was

deprived of his Eighth Amendment rights. The circuit court observed that "[c]ausing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted. The indecent conditions that existed in this ... cell seriously threatened the physical and mental soundness of its unfortunate occupant." *Id.* at 978; *see also Wright v. McMann,* 387 F.2d 519, 522, 526 (2d Cir.1967) (finding 33–day placement of prisoner in strip cell which was "fetid and reeking from the stench of the bodily wastes of previous occupants which ... covered the floor, the sink, and the toilet," combined with other conditions, violated Eighth Amendment).

Courts outside of the Second Circuit have reached the same result where exposure to sewage lasts for a substantial period of time. *See McCord v. Maggio,* 927 F.2d 844, 846–47 (5th Cir.1991) (finding Eighth Amendment violation where inmate lived in cell for two years and slept on floor for months "into which rain water and backed-up sewage leaked"); *Williams v. Adams,* 935 F.2d 960, 961–62 (8th Cir.1991) (reversing grant of summary judgment for prison defendants where plaintiff alleged "that the toilet in the cell did not work" and overflowed continuously "and the floor stay[ed] filthy with its wast[e]" over 13–day period); *Howard v. Adkison,* 887 F.2d 134, 136–38 (8th Cir.1989) (holding Eighth Amendment violation sufficiently proven where inmate lived for two years in cell where walls, door and food slot "were covered with human waste," mattress was "stained with urine and human waste" and pleas for remedial measures went unanswered); *McCray v. Sullivan,* 509 F.2d 1332, 1336 (5th Cir.1975) (finding conditions in isolation cells where inmates lived for as long as 21 days violated Eighth Amendment where waste "frequently" overflowed onto the floors of the cells); *Looper v. Sanders,* Civil No. 6:10–cv–06037, 2011 WL 861714, at \*4–\*5, \*8 (W.D.Ark. Mar.10, 2011) (denying defendants' motion for summary judgment where plaintiff was exposed to raw sewage for over 10 months); *Jones v. Sanders,* No. 08–6035, 2009 WL 2432632, at \*7

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

(W.D.Ark. Aug.7, 2009) (Report and Recommendation) (recommending denial of defendants' motion for summary judgment where plaintiff was exposed to raw sewage for a month and a half).

**\*9** "Where an inmate's exposure to waste lasts for three or four days, the Circuits are split." *Ortiz v. Department of Correction of City of New York,* 2011 WL 2638137 (S.D.N.Y. Apr.29, 2011) (comparing *Smith v. Copeland,* 87 F.3d 265, 269 (8th Cir.1996) (affirming summary judgment for defendants where plaintiff was subjected to an overflowing toilet in his cell for four days), *with McBride v. Deer,* 240 F.3d 1287, 1291–92 (10th Cir.2001) (vacating Rule 12(b)(6) dismissal where plaintiff alleged he was forced to live in "feces-covered cell" for three days); *Sperow v. Melvin,* No. 96–4219, 182 F.3d 922, 1999 WL 450786, at *l–*3 (7th Cir. June 24, 1999) (unpublished opn.) (reversing Rule 12(b)(6) dismissal where inmate "was subjected to appalling conditions" of waste-filled cell "for three full days"); *Young v. Quinlan,* 960 F.2d 351, 355–56, 363–65, (3d Cir.1992), *superceded by statute on other grounds as stated in Ghana v. Holland,* 226 F.3d 175, 184 (3d Cir.2000) (reversing summary judgment for defendants where inmate was moved to "dry cell" without working toilet for 96 hours and forced to urinate and defecate in his cell)).

Especially because Willey has adequately pled maliciously wilful conduct by C.O. Allessandro, rather than mere negligence, the alleged shut-off of the running water to Willey's toilet for several days place this case on the borderline between the levels of discomfort to be expected in prison and unacceptable, inhumane conditions. After reviewing the cases cited above, however, the Court concludes that on the particular facts presented here, Willey's conditions-of-confinement claim cannot withstand summary judgment. First, Willey is vague as to the dates that the alleged shut-off occurred, and has made conflicting allegations about the duration ("extensive lengths of time" versus "seven days" versus the time between December 1, 2005, and

January 10, 2006). Second, Willey has not claimed that human waste from his toilet overflowed into his cell. *See Smith v. United States,* No. 9:09–CV–729 (TJM/DRH), 2011 WL 777969 at *2, *11 (N.D.N.Y. Feb.3, 2011) (Report and Recommendation) (recommending denial of summary judgment where inmate alleged that officers "refused to flush the toilet or provide the inmates with toilet paper for two weeks," causing overflow of human waste to spill onto cell floor and inmate to become "nauseous and lightheaded from the odor"), *adopted by,* 2011 WL 776150 (N.D.N.Y. Mar.1, 2011). Third, Willey has not claimed that he suffered sickness or other ill effects as a result of the malodorous atmosphere caused by the water shut-off. *Contrast with Sperow, supra* (reversing dismissal of complaint where, after three days of exposure to human feces and urine on the walls and floor, pieces of a mattress on the floor caked with feces and urine, and a dozen plastic food trays with decayed food, plaintiff was had a headache, gastrointestinal and respiratory problems, and was feverish and sweating); *Smith, supra* (denying summary judgment where inmate alleged that his exposure to raw sewage from overflowing toilet caused sickness and nauseousness).

**E. Imposition of Restricted Diet in Violation of Eighth Amendment and Due Process**

**\*10** Willey asserts that D.S.S. Monahan placed him on a pre-hearing restricted diet for seven days, consisting of a loaf of bread cabbage, in violation of his Eighth Amendment rights. According to Willey, the bread was usually stale and the cabbage usually rotten. Willey also asserts a due process claim in connection with his request to D.S.S. Monahan to rescind the restricted-diet order during the seven days.

**1. Eighth Amendment**

As stated above, "a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'.... [Second,] a prison official must have a 'sufficiently culpable state of mind.' "

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Farmer,* 511 U.S. at 834.

With respect to the first prong, "under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin,* 725 F.2d 12, 15–16 (2d Cir.1983) (citations omitted). For instance, "the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food ... [that does not] present an immediate danger to health and well being of the inmates who consume it." *Id.* at 15 (internal quotation marks and citation omitted). With respect to the second prong, a deliberate indifference to inmate health or safety may be shown where a prison official knew a diet was inadequate and likely to inflict pain. *See Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d Cir.2002).

Courts in this Circuit routinely have dismissed claims similar to Willey's, finding that the inmate failed to establish that he experienced a sufficiently serious deprivation for purposes of the Eighth Amendment. *See Smith v. Burge,* 2006 WL 2805242, at *11 (N.D.N.Y. Sept.28, 2006) ("Plaintiff does not establish, or even specifically allege, that (1) the food he was served [i.e., a hard loaf of bread and an apple per day] was nutritionally inadequate (e.g., with respect to the total calories it contained, its grams of carbohydrates, protein, fiber, and fat, or its units of vitamins and minerals, etc.), (2) that he was physically unable to eat the food, or (3) that he lost weight during the week in question.") (footnotes omitted) & *id.,* n. 78 (citing, *inter alia, McEachin v. McGuinnis,* 357 F.3d 197, 199–201 (2d Cir.2004) (affirming district court's F.R.C.P. 12(b)(6) dismissal of Eighth Amendment claim alleging, *inter alia,* that inmate was placed on a restricted diet consisting of "loaf" for seven days)).

## 2. Procedural Due Process

To pursue a claim under 42 U.S.C. § 1983 that a defendant deprived him of his constitutional right to due process, a plaintiff must show that he "enjoyed a protected interest, and defendant's

deprivation of that interest occurred without due process of law." *Taylor v. Rodriguez,* 238 F.3d 188, 191 (2d Cir.2001) (citation omitted). Thus, courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient...." *Kentucky Dept. of Corr.,* 490 U.S. at 460.

**\*11** Apparently relying on 7 N.Y.C.R.R. § 304.2,[FN3] Willey asserts that he was entitled to a hearing before D.S.S. Monahan regarding his request to be removed from the restricted diet prior to the end of the seven-day period.

> FN3. Title 7, Section 304.2 of the New York Code of Rules and Regulations provides, in pertinent part, as follows:
>
> "The superintendent or his designee may issue a written order placing an inmate reported to have engaged in conduct described in subdivision (b) of this section [which conduct includes refusing to obey a direct order to return a food container at the conclusion of a meal] on a restricted diet for no more than seven days pending the outcome of the inmate's superintendent's hearing. The order shall briefly state the reason(s) for the imposition of the restricted diet and contain the following notice to the inmate: 'You may write to the deputy superintendent of security or his/her designee to make a statement as to the need for the continued pre-hearing imposition of the restricted diet.'..."

In order to demonstrate the existence of a liberty interest, the plaintiff must allege facts suggesting that he was subjected to a deprivation that imposed "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *see also Tellier,* 280 F.3d at 80. Willey is hard-pressed to allege or establish such facts given that the Second Circuit has held that the imposition of a restricted diet does not impose an "atypical and significant hardship" on inmates. *McEachin v. McGuinnis,* 357 F.3d at 200–01 (finding that a seven-day post-hearing restricted diet did not impose an atypical and significant hardship). Indeed, several federal courts "have specifically held that the imposition of a seven-day pre-hearing restricted diet of 'loaf' (imposed without the issuance of a deprivation order or the holding of a hearing during the seven-day period) did not create an atypical and significant hardship for purposes of the Fourteenth Amendment." *Smith v. Burge, supra* at n. 88 (citing *Beckford,* 151 F. Supp .2d at 208–209, 218–219 & n. 4 (not mentioning 7 N.Y.C.R.R. § 304.2, but granting defendants motion for summary judgment as to plaintiff's due process claims because a seven-day pre-hearing restricted diet did not impose an atypical and significant hardship); *Turnboe v. Gundy,* 25 Fed. Appx. 292, 293 (6th Cir.2001) (being placed on a pre-hearing restricted diet consisting of "food loaf" for seven days does not constitute an "atypical and significant hardship" on the inmate in relation to the ordinary incidents of prison life); *Thomas v. Virginia,* 04–CV–0273, 2005 WL 15517, at *10–11 (W.D.Va. July 28, 2005)). The Court finds the analysis in these cases, especially *Smith v. Burge, supra,* persuasive. Accordingly, the Court concludes that Willey has failed to establish a procedural due process claim with respect to the seven-day imposition of a restricted diet prior to his disciplinary hearing.

**V. Conclusion and Orders**

For the foregoing reasons, Defendants' motion for summary judgment is granted, and the Amended Complaint is dismissed. Plaintiff's motion for appointment of counsel, asserted in his opposition to Defendants' summary judgment motion, is denied as moot.

Plaintiff is advised that he must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

W.D.N.Y.,2013.
Willey v. Kirkpatrick
Not Reported in F.Supp.2d, 2013 WL 434188 (W.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 419999 (N.D.N.Y.)
**(Cite as: 2010 WL 419999 (N.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Henry **BENITEZ**, Plaintiff,
v.
J. **LOCASTRO**, Lt.; Lt. Miller; D. Selsky, Dir. of
Shu; J. Burns; Sgt. Martens; C. Gummerson, Capt.;
J. Rourke, Capt.; M. Bradt; C. Parmiter; J. Burge;
T. Eagen, Dir. of Corrections; J. Wilkinson; R.
Smith; C.O. Baranska; R.N.S. Lennox; J.Porten; J.
Mcnamara; John Does 1–6, C.O.s; R. Smith, R.N.;
W. Chilson, Sgt.; Sergeant Colon; R. Considine,
C.O.; Psych. Kneeland; V. Konecny; C.O. Clarke;
S. Crozier; John Doe, XII, C.O.; Cho Wolczyk;
Sergeant Smith; C.O. Miller; S. Yorkey, Sgt.; Sgt.
Murley; Lt. Easterbrook; C.O. Loomis; T. Quinn;
Sgt. Christopher; C.O. Roux; C.O. Leonello; C.O.
Meyers; M. Kessel; G. Maccucci, C.O.; E. Amber-
man; and M. Melindez, Defendants.

No. 9:04–CV–423 (NAM/RET).
Jan. 29, 2010.

Henry **Benitez**, Malone, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the
State of New York State, Ed. J. Thompson, Assist-
ant Attorney General, Syracuse, NY.

Hon. Andrew M. Cuomo, Attorney General for the
State of New York, Timothy P. Mulvey, Esq., As-
sistant Attorney General, of Counsel, Albany, N.Y.,
for Defendants.

**MEMORANDUM–DECISION AND ORDER**
Hon. NORMAN A. MORDUE, Chief Judge.

**\*1** Plaintiff, an inmate in the custody of the
New York State Department of Correctional Ser-
vices ("DOCS"), brought this action under 42
U.S.C. § 1983. The amended complaint (Dkt. No.
5) alleges various constitutional deprivations in
connection with several incidents at Auburn Cor-

rectional Facility in 2001 and 2002. Defendants
moved for summary judgment dismissing the action
(Dkt. No. 118). Upon referral pursuant to 28 U.S.C.
§ 636(b)(1)(B) and Local Rule 72.3(c), United
States Magistrate Judge Randolph F. Treece issued
a thorough Report and Recommendation (Dkt. No.
139) recommending that summary judgment be
granted in part and denied in part. Specifically, re-
garding the Eighth Amendment excessive force/
medical indifference claims stemming from the
events of July 9, 2002, Magistrate Judge Treece
finds questions of fact regarding exhaustion and re-
commends as follows: that the claims against Nurse
R. Smith be dismissed; that summary judgment be
denied as to all other July 9, 2002 excessive force
claims (*i.e.,* the claims against J. Rourke and the
John Doe defendants); and that plaintiff be granted
leave to file a second amended complaint to substi-
tute named defendants for the John Doe defendants.
Magistrate Judge Treece recommends dismissal of
plaintiff's Eighth Amendment conditions-
of-confinement claims relative to the following:
deprivation orders issued in November 2001 and
July 2002; poor cell ventilation due to cell shield;
denial of meals; and injuries from tight shackles
and cuffs. Magistrate Judge Treece further recom-
mends dismissal of plaintiff's claims that the
deprivation, restraint, and cell shield orders were
retaliatory. In addition, Magistrate Judge Treece re-
commends dismissal of plaintiff's due process
claims regarding the disciplinary hearings of
November 21, 2001, July 11, 2002, and July 16,
2002.

Plaintiff filed an objection (Dkt. No. 140) to
certain aspects of the Report and Recommendation.
As to all other portions of the Report and Recom-
mendation, by failing to object, plaintiff waives fur-
ther judicial review. *See Roldan v. Racette,* 984
F.2d 85, 89 (2d Cir.1993). Pursuant to 28 U.S.C. §
636(b)(1)(C), this Court conducts a *de novo* review
of the portions of the Report and Recommendation
to which plaintiff objects, specifically the recom-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

mendations that the Court dismiss plaintiff's medical indifference claim against Nurse R. Smith stemming from the July 9, 2002 incident, and his Eighth Amendment claims stemming from the deprivation orders issued in November 2001 and July 2002. Upon *de novo* review, the Court agrees with Magistrate Judge Treece's factual summary, analysis, and recommendation regarding these issues. Accordingly, the Court accepts the Report and Recommendation in its entirety.

It is therefore

ORDERED that United States Magistrate Judge Randolph F. Treece's Report and Recommendation (Dkt. No. 139) is accepted in its entirety; and it is further

ORDERED that defendants' motion for summary judgment (Dkt. No. 118) is granted to the extent of dismissing all claims except the Eighth Amendment excessive force claims against Rourke and John Does Nos. 1–6 stemming from the events of July 9, 2002; and it is further

**\*2** ORDERED that plaintiff is granted 30 days from the date of this Memorandum–Decision and Order to file a motion to amend his amended complaint in order to identify John Does Nos. 1–6, which shall include a proposed second amended complaint attached thereto.

IT IS SO ORDERED.

### *REPORT–RECOMMENDATION and ORDER*
RANDOLPH F. TREECE, United States Magistrate Judge.

*Pro se* Plaintiff Henry **Benitez** filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated during several events that allegedly occurred at Auburn Correctional Facility in 2001 and 2002. Specifically, Plaintiff alleges violations of his constitutional rights as guaranteed by the First Amendment (retaliation), Eighth Amendment (excessive force and conditions of confinement), and Fourteenth

Amendment (due process). Dkt. No. 5, Am. Compl. Presently before the Court is Defendants' Motion for Summary Judgment, Dkt. No. 118, which Plaintiff opposes, Dkt. Nos. 137–38.

Previously, this Court issued a Report–Recommendation and Order addressing Defendants' Motion for Judgment on the Pleadings, which was adopted in its entirety by the Honorable Norman A. Mordue, Chief United States District Judge for the Northern District of New York. Dkt. Nos. 106 & 108. Chief Judge Mordue's Order dismissed the following Defendants: Amberman, Christopher, Colon, Easterbrook, Kessel, Konecny, Lennox, Leonello, Loomis, Maccucci, McNamara, Melindez, Meyers, C.O. Miller, Murley, Parmiter, Porten, Quinn, Roux, Sgt. Smith, Wilkinson, and Yorkey. Dkt. No. 108, Order at p. 2.

Defendants' current Motion is brought on behalf of the remaining Defendants.[FN1] For the reasons that follow, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED in part** and **DENIED in part.**[FN2]

> FN1. The remaining Defendants are: **Locastro**, Lt. Miller, Selsky, Burns, Martens, Gummerson, Rourke, Bradt, Burge, Eagen, R. (C.O.) Smith, Baranska, (R.N.) Smith, Chilson, Kneeland, Clarke, Considine, Crozier, and Wolczyk. *See generally* Dkt.

> FN2. Because of the volume of claims and Defendants, the Court will recite the undisputed/disputed material facts as it addresses each claim.

### I. DISCUSSION
#### A. Summary Judgment Standard
Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through " 'pleadings, depositions, answers to interrogatories, and admissions on file, together

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 419999 (N.D.N.Y.)
**(Cite as: 2010 WL 419999 (N.D.N.Y.))**

with [ ] affidavits, if any,' " that there is no genuine issue of material fact. *F.D.I. C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e) ] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.,* 964 F.2d 149, 154 (2d Cir.1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann,* 21 F.3d 522, 525–26 (2d Cir.1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard ... they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) and *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995)).

**\*3** When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.,* 164 F.3d 736, 742 (2d Cir.1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding pro se, the court must "read [his or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994), *accord, Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991).

**B. Eighth Amendment Claims**

1. *Excessive Force and the Events of July 9, 2002*

Plaintiff asserts that "[o]n July 9, 2002, [he] threw a liquid substance through the narrow food port of his cell, striking [Defendants] Lennox and Martens." Dkt. No. 5, Am. Compl. at ¶ 26. Shortly thereafter

Porten, McNamara, and various other guards approached **Benitez's** cell and ordered him to submit to mechanical restraints. **Benitez** then requested to be allowed to speak to a captain. Sergeant Vasile (not a defendant) refused, whereupon **Benitez** threw a liquid substance though the narrow food port on the gate of his cell.

About 10 minutes after the incident described [ ] [above], [Defendant] Rourke walked past **Benitez's** cell and gave **Benitez** the finger. Shortly thereafter, Rourke and Defendants John Does Nos. 1–6 approached **Benitez's** cell. Rourke then asked **Benitez** whether or not he would come out of his cell. **Benitez** responded in the affirmative. With a callous and malicious intent to subject **Benitez** to gratuitous humiliation and punishment, Rourke ordered John Does Nos. 1–6 to forcibly remove **Benitez** from his cell.

Acting on Rourke's order, John Does Nos. 1–4 rushed into **Benitez's** cell, whereupon John Doe No. 1 maliciously and sadistically struck **Benitez**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

on the top of his head with a large body shield [made of] plexiglas, knocking **Benitez** on his bed face down and breaking his eyeglasses. John Does Nos. 1–4 then maliciously and sadistically punched **Benitez** in his face, head, neck, back, rib cage and arms rapidly and repetitiously, and **Benitez** passed out.

\* \* \*

While punching **Benitez** about his body, John Does Nos. 1–4 maliciously and sadistically twisted **Benitez's** hands, fingers, and feet while simultaneously using enormous pressure to tighten too tightly handcuffs and leg irons that had been placed on **Benitez**.

**\*4** John Does Nos. 1–6 forcibly removed **Benitez** from his cell and placed him in a strip cell.... There, John Does 1–6 cut **Benitez's** clothes off of his person. **Benitez**, who was then experiencing enormous pain about his entire body, was then "examined" by Defendant Nurse R. Smith.... Nurse Smith willfully and knowingly falsely wrote in **Benitez's** medical chart that he had minor injuries. Nurse Smith willfully refused to provide **Benitez** pain relieving medicine, even though she knew that **Benitez** was then suffering from extreme pain.

Thereafter, John Does Nos. 1–6 walked **Benitez** naked cuffed and shackled with a restraining strap from P3–cell into A1–cell. There, John Does 1–3 maliciously and violently slammed **Benitez** against a metal bed frame, causing **Benitez** to severely strike his face against the metal bed frame. While forcibly holding **Benitez**['s] face down on the metal frame, John Does Nos. 1–3 maliciously and sadistically punched **Benitez** on his face, head, back, rib cage, and arms, even though he did not struggle nor resist. John Does Nos. 1–3 then removed the handcuffs, shackles, and restraining strap from **Benitez's** person and rushed out of the cell.

*Id.* at ¶¶ 26–33.

Plaintiff alleges to have suffered several injuries as a consequence of the above incidents, including a "laceration in the front of his head," bruising all over his body, and "permanent nerve damage [to his] [ ] wrists, hands, fingers, and ankles." *Id.* at ¶¶ 34–35.

Defendants assert Plaintiff has failed to exhaust all of his claims arising out of the July 9, 2002 incident. The Prisoner Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997(e)(a), states that "[n]o action shall be brought with respect to prison conditions under [section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002); *see also Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004).

The New York State Department of Corrections has created a three-step grievance process known as the Inmate Grievance Program ("IGP"). *See Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). First, the inmate must file a grievance complaint with the Grievance Clerk within twenty-one (21) days of the incident. N.Y. COMP.CODES R. & REGS. tit. 7, § 701.5(a)(1) (2007). The complaint is then submitted to the Inmate Grievance Resolution Committee (IGRC) to review the grievance. *Id.* at § 701.5(b). Second, if the inmate disagrees with the IGRC decision, then the inmate may appeal to the Superintendent. *See id.* at § 701.5(c). Third, if the inmate disagrees with the Superintendent's determination, an appeal may be taken to the Central Office Review Committee (CORC) who renders a final administrative determination. *Id.* at § 701.5(d). Upon the completion of all three steps, an inmate may "seek relief pursuant to 42 U.S.C. § 1983." *Colon v. Harvey,* 344 F.Supp.2d 896, 897 (W.D.N.Y.2004) (citing *Neal v.*

*Goord,* 267 F.3d 116, 122 (2d Cir.2001) & *Santos v. Hauck,* 242 F.Supp.2d 257, 259 (W.D.N.Y.2003) ).

**\*5** The Second Circuit has suggested a three-step inquiry when, as here, the inmate opposes a defendant's assertion that the inmate did not exhaust his remedies.

Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Abney v. McGinnis,* 380 F.3d 663, 667–68 (2d Cir.2004). The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004), or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, *Ziemba v. Wezner,* 366 F.3d 161, 163 (2d Cir.2004). If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord,* 380 F.3d 670, 676 (citing *Berry v. Kerik,* 366 F.3d 85, 88 (2d Cir.2003)[.]

*Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004); *see also Braham v. Clancy,* 425 F.3d 177, 181–82 (2d Cir.2005).

In response to Defendants' exhaustion argument, Plaintiff asserts that he was unable to exhaust these claims because (1) he was denied a pen and paper from July 9 through August 8, 2002; (2) from August 8–17, 2002, various Defendants refused to submit his outgoing mail and grievances; and (3) on September 4, 2002, he submitted a seven (7) page

Grievance concerning the events of July 9th to Officer Hnatiw,[FN3] but Defendant Parmiter did not process that Grievance in order to obstruct his filing of a federal civil action. Dkt. No. 137, Pl.'s Mem. of Law at pp. 6–9 & Henry **Benitez** Decl., dated July 15, 2009, at ¶¶ 4–9; *see also* Am. Compl. at ¶¶ 51, 53, 55 & 86.

> FN3. Officer Hnatiw is not a Defendant in this action.

With respect to Plaintiff's first allegation, Defendants have submitted copies of Deprivation Orders indicating that Plaintiff was denied all in-cell property from, at the latest, July 14, 2002, through, at the earliest, July 25, 2002.[FN4] Dkt. No. 118–7, Mark L. Bradt Aff., dated Dec. 9, 2008, Ex. C, Deprivation Orders, dated July 9–25, 2002.

> FN4. The first Deprivation Order, dated July 9, 2002, indicates that Plaintiff was deprived only of cell water. Bradt Aff., Ex. C, Deprivation Order, dated July 9, 2002. On July 16, 2002, Bradt signed a Deprivation Order Renewal of the original July 9 Order, but also listed "cell property" as one of the deprivations. *Id.,* Deprivation Order, dated July 16, 2002. Thus, it is unclear if the "cell property" was omitted from the original July 9 Order, or if it was added as an additional deprivation upon renewal of that Order. Also, although Plaintiff alleges that these Deprivation Orders were continued through August 8, 2002, the copies of the Orders provided to the Court run only to July 25, 2002. Am. Compl. at ¶¶ 53 & 55; Brad Aff., Ex. C.

As per Plaintiff's second allegation, the record shows that he filed a Grievance, dated August 17, 2002, complaining that several Defendants refused to take his outgoing mail from August 8–17, 2002. **Benitez** Decl., Ex. B, Grievance, dated Aug. 17, 2002. The record also reflects that two of Plaintiff's Grievances, dated August 8, 2002, were not stamped received by the IGRC until August 21,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

2002. Dkt. No. 118–5, Defs.' 7.1 Statement, Ex. P, Grievances, dated Aug. 8, 2002 (stamped received by the IGRC on Aug. 21, 2002). In one of those Grievances, Plaintiff asserted: "[o]n July 9, 2002, I was forcibly moved from SHU cell G–2 to SHU cell A–1 by an extraction team that, among other things, allegedly broke my glasses," and requested information about the status of the repairs to his broken glasses. *Id.,* Ex. P, Grievance, dated Aug. 8, 2002. That Grievance contains no other allegations concerning the events of July 9.

**\*6** With respect to Plaintiff's claim that Parmiter refused to process a Grievance he filed on September 4, 2002, there is no evidence presented before us by either side to support or rebut that claim. However, such allegation was arguably raised, albeit with less specificity, in Plaintiff's Amended Complaint: "from August 8, 2002 to September 12, 2002, Parmiter willfully and knowingly wrongly refused to file numerous formal grievances submitted by **Benitez**." Am. Compl. at ¶ 86.[FN5]

> FN5. In our previous Report–Recommendation, we dismissed any due process claim Plaintiff might have intended to assert concerning the failure to process grievances as an independent constitutional violation. Dkt. No. 106 at pp. 20–21.

Considering the above allegations about the obstruction of Plaintiff's grievances, and lack of evidence before us regarding those claims, we find that questions of fact exist with respect to whether the Defendants' own actions inhibited Plaintiff's ability to exhaust available administrative remedies, and therefore, whether they should be estopped from asserting the affirmative defense of failure to exhaust. The record shows that Plaintiff was deprived of all in-cell property for most of July 2002 and, as he points out, DOCS regulations require that grievances be submitted within twenty-one (21) days of the alleged occurrence. N.Y. CODES COMP. R. & REGS, tit. 7, § 705.1(a). Thus, it is possible that

even if Plaintiff had filed a grievance after the Deprivation Orders were lifted it may have been denied as untimely. As such, there are also questions as to whether "special circumstances" exist that might justify Plaintiff's failure to exhaust. Therefore, we shall proceed to the merits of Plaintiff's claims surrounding the events of July 9, 2002.

Defendants assert that Plaintiff's excessive force claims against John Does Nos. 1–6 should be dismissed for failure to allege personal involvement on the part of any named Defendant. Defs.' Mem. of Law at p. 27. In response, Plaintiff argues that the Defendants' failure to timely respond to his discovery requests delayed the revelation of the John Doe Defendants' identities. Pl.'s Mem. of Law at pp. 2–3. We note that in an Order, dated August 29, 2006, this Court granted Plaintiff's Motions to Compel Defendants to respond to his outstanding discovery requests, some of which concerned the identities of the John Does. Dkt. No. 88 at pp. 6–7. Then, on June 12, 2007, this Court addressed Plaintiff's unopposed Motion for Sanctions against Defendants for their alleged failure to comply with our August 2006 Order; we denied Plaintiff's Motion for Sanctions, but ordered Defendants' compliance with our August 2006 Order. Dkt. No. 91, Order at p. 3.

Plaintiff now asserts that the "Defendants recently complied with the Court's June 12, 2007 Order by disclosing to **Benitez** the identities of the Defendants at issue." Dkt. No. 137, Pl.'s Mem. of Law at p. 3.[FN6] Moreover, Plaintiff asserts his intention to seek leave to file a motion to amend his Amended Complaint to assert claims against these would-be Defendants. *Id.* Given the mixed and prolonged history of discovery in this case, we believe it is appropriate to allow Plaintiff to submit a motion to amend his Amended Complaint in order to identify John Does Nos. 1–6.[FN7] Therefore, Defendants' Motion is **denied** as to Plaintiff's excessive force claims against John Does Nos. 1–6. Should this Report–Recommendation and Order be

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 419999 (N.D.N.Y.)
(Cite as: 2010 WL 419999 (N.D.N.Y.))

adopted by the District Court, we shall afford Plaintiff *thirty (30) days* from the date of such adoption to file a motion to amend his Amended Complaint to include the names of John Does Nos. 1–6.

FN6. In that respect, the Court notes that documents submitted in support of the Defendants' current Motion clearly indicate the names of the correctional officers involved in the July 9, 2002 cell extraction. *See* Defs.' 7.1 Statement, Ex. C.

FN7. The Court is aware that any such motion to amend will face serious and possibly fatal hurdles. The Second Circuit's interpretation of the "relation back" doctrine imbedded in Federal Rule of Civil Procedure 15 may leave Plaintiff no recourse as his failure to identify the John Doe Defendants was arguably not do to a mistake, but rather, to his own lack of knowledge. *See Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 470 (2d Cir.1995) ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities."). However, several courts in this Circuit, including this one, have held that the aforementioned rule may not be applicable in all circumstances, particularly when a defendant has prevented the plaintiff from discovering the identity of the John Doe defendants and the plaintiff has taken reasonable affirmative steps to discover their identities. *See Jennings v. Dep't of Justice Serv.,* 2008 WL 2967533, at *5 (N.D.N.Y. Mar. 26, 2008)* (Report–Recommendation and Order) *adopted in part and rejected in part on other grounds sub nom. by Jennings v. Ciciarelli,* 2008 WL 2967530 (N.D.N.Y. July 30, 2008); *see also, e.g., Byrd v. Abate,* 964 F.Supp. 140, 146 (S.D

.N.Y.1997) (stating that "[t]o hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended"); *Maccharulo v. Gould,* 2009 WL 2495780, at *6 (S.D.N.Y. Aug. 14, 2009)* ("Where a plaintiff tries diligently during the limitations period to ascertain the identities of the intended defendants, failure to ascertain the correct names within the period, combined with some 'John Doe' or other generic identification in the pleading, may suffice to establish a factual 'mistake' supporting relation back."). Therefore, it would be rash at this juncture for the Court to rule out the possibility that Plaintiff's forthcoming second amended complaint will not relate back to his original Complaint under Rule 15.

*7 Plaintiff's claim against Defendant Rourke should also survive the Defendants' Motion. Although Plaintiff does not allege that Rourke physically participated in the alleged use of excessive force, he claims that Rourke maliciously ordered John Does 1–6 to forcibly remove him from his cell despite his willingness to leave, and then shouted "stop resisting" in order to "encourage John Does Nos. 1–4 to continue to inflict gratuitous humiliation and extreme physical pain on **Benitez**, even though he knew that **Benitez** was not resisting John Does Nos. 1–4." Am. Compl. at ¶¶ 29–30. Liberally interpreted, Plaintiff has asserted a claim that Rourke failed to protect him once the alleged beating commenced, and then encouraged the John Does to continue in that conduct. Although the documents Defendants have attached as Exhibit C to their 7.1 Statement support their contention that Rourke had Plaintiff extracted from his cell in order to place him in a different cell with a more secure food hatch so as to prevent his continued throwing of feces on prison staff,FN8 nothing in the record answers Plaintiff's allegations that Rourke allowed

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

and encouraged the use of excessive force against him *during* that extraction. Therefore, it is recommended that the Motion be **denied** as to Plaintiff's claims against Rourke.

> **FN8.** For example, in a copy of a memorandum from Rourke to Deputy Superintendent of Security Bradt dated July 9, 2002, Rourke states that he "went to SHU to help facilitate the move of [ **Benitez**] to A–1 cell which has a more secure cell hatch. On 7/9/02 this inmate had already thrown on (4) staff members in SHU." Defs.' 7.1 Statement, Ex. C–9, Mem. dated July 9, 2002.

However, Plaintiff's claims against Defendant Nurse R. Smith should be **dismissed.** Plaintiff's Eighth Amendment claim against Defendant Nurse Smith is that after he was allegedly beaten by John Does Nos. 1–6 during the cell extraction, "Nurse Smith willfully refused to provide **Benitez** pain relieving medicine, even though she knew that **Benitez** was then suffering from extreme pain." Am. Compl. at ¶ 32. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs." *Smith v.. Carpenter,* 316 F.3d 178, 183 (2d Cir.2003) (internal quotation marks and citations omitted) (alteration in original). This standard contains both objective and subjective elements. *Id.* "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberative indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Id.* at 183–84 (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) & *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).

Defendants argue that Plaintiff has failed to allege that he suffered from a serious medical injury. Defs.' Mem. of Law at pp. 28–29. Plaintiff alleges that at the time he was presented before Nurse Smith, he was suffering from "extreme pain," but he does not allege the nature of that pain, its loca-

tion, nor whether he communicated to Nurse Smith the nature or location of any injury he might have suffered or his need for pain medication. Plaintiff does allege that as a result of the excessive force used against him, he suffered a "laceration to the front of his head, and abrasions and multiple areas of bright red bruising on his nose, back, chest, stomach, arms, hands, legs and feet," as well as "permanent nerve damage [to his] [ ] wrists, hands, fingers, and ankles." Am. Compl. at ¶¶ 34–35. However, Plaintiff does not allege that Nurse Smith was made aware of any of those aforementioned injuries, nor does he provide any factual basis for his conclusion that he suffered nerve damage. With respect to his claims of bruises and a laceration (the size and depth of which he does not allege), those generally pleaded injuries do not constitute serious medical conditions under the Eighth Amendment. *See, e.g., Dawes v. Coughlin,* 159 F.3d 1346 (2d Cir.1998) (holding that a small laceration on an inmate's elbow was not a serious injury under the Eighth Amendment); *see also Dallio v. Hebert,* 2009 WL 2258964, at *16 (N.D.N.Y. July 28, 2009) (holding that black eyes, bruising, red spots, kick marks, and lacerations did not constitute a serious medical need). Therefore, we agree with Defendants that Plaintiff's claim that he suffered from a serious medical injury is conclusory and for that reason his claim against Nurse Smith should be **dismissed.**[FN9]

> **FN9.** Plaintiff does not allege that Nurse Smith participated in or was witness to any of the alleged acts of excessive force taken against him.

### 2. *Deprivation Orders*

**\*8** Plaintiff alleges that in November 2001 and July 2002, various Defendants issued Deprivation Orders against him in violation of the Eighth Amendment.[FN10] Plaintiff's allegations regarding November 2001 are as follows:

> **FN10.** Plaintiff also asserts these Deprivation Orders were motivated by retaliatory animus. We address his retaliation claims

below in Part I.D.

Upon **Benitez's** arrival at Auburn prisoner's SHU on November 14, 2001, Defendant J. Burns [ ] wantonly filed a Deprivation Order ... against **Benitez** in retaliation for his having sued Burns and various other Auburn prison employees in 1989. As a result, **Benitez** was denied the following items and services from November 14 to November 26, 2001: all allowable in-cell property; sink and toilet water; showers; one-hour outdoor exercise period; and, among other things, law library services.
Am. Compl. at ¶ 8.

As for the July 2002 allegations, we summarized those claims in our previous Report–Recommendation addressing Defendants' Motion for Judgment on the Pleadings as follows:

Plaintiff claims that Defendants Bradt and Chilson either approved or issued unspecified deprivation orders causing Plaintiff to be without the following items and services from July 9 through July 14, 2002: all in-cell property, pen, bed sheets, mattress, toilet tissue, running water, showers, exercise periods, and law library services. Am. Compl. at ¶ 51. Plaintiff also claims that from July 14 through July 25, 2002, and from July 25 through August 8, 2002, Defendants Bradt, Chilson, and Martens approved or issued more unspecified orders depriving him of the same items and services listed above.[FN11] *Id.* at ¶¶ 53 & 55.

> **FN11.** In addition to the items listed, Plaintiff asserts he was denied "a water bucket" from July 25 though August 8, 2002. Am. Compl. at ¶ 55.

Dkt. No. 106 at pp. 12–13.

Plaintiff also claims in his Amended Complaint that the above-mentioned July 2002 Deprivation Orders were approved of by Defendants Burge, Kneeland, Rourke, Gummerson, and Wolczyk. Am.

Compl. at ¶¶ 52, 54, & 56.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter,* 501 U.S. 294, 297–99 (1991) (citation omitted) (cited in *Branham v. Meachum,* 77 F.3d 626, 630–31 (2d Cir.1996)). With respect to deprivation orders, the Second Circuit has held that it is appropriate to consider whether the order in question "was reasonably calculated to restore prison discipline and security and, in that purposive context, whether the officials were deliberately indifferent to [plaintiff's] health and safety." *Trammell v. Keane,* 338 F.3d 155, 163 (2d Cir.2003).

Defendants assert that the Deprivation Orders enforced against Plaintiff were issued for valid penological reasons. Mark L. Bradt was a Deputy Superintendent of Security ("DSS") at Auburn from January 7, 2002 through April 30, 2004. Bradt Aff. at ¶ 1. Bradt avers that "in order to make determinations regarding appropriate levels of security and restraint for the inmates in the prison, [he] frequently consulted the disciplinary histories of the inmates at the prison." *Id.* at ¶ 5. Prior to his arrival at Auburn, Plaintiff had a lengthy disciplinary history, which included the following violations of DOCS rules:

**\*9** 1. creating a disturbance (5 times); 2. assault on staff (4 times); 3. lewd conduct (8 times); 4. threats (6 times); 5. unhygienic act (11 times); 6. arson (2 times); 7. flooding (2 times); 8. loss or damage to property (3 times); and 9. violent conduct (2 times).

*Id.* & Ex. A, Pl.'s Disciplinary History.

Bradt states that upon **Benitez's** arrival at Auburn on November 14, 2001, he was issued an order that deprived him of water, all cell property, bucket, and personal property from November 14–25,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

FN12 2001, because of his history of disruption and throwing things. Bradt Aff. at ¶ 7 & Ex. C, Deprivation Order, dated Nov. 22, 2001. That Deprivation Order was issued by then-DSS John Burns, who rescinded the order on November 26, 2001. *Id.*

> FN12. The original Deprivation Order was to last from November 14–22, but was renewed on November 23, 24, and 25, 2002. Bradt Aff., Ex. C, Deprivation Order.

On July 9, 2002, Bradt issued Plaintiff an order depriving him of cell water because Plaintiff had thrown "liquid substances on two (2) occasions from his cell onto Auburn C.F. staff members," and had flooded his and other cells in his section. Bradt Aff. at ¶¶ 8–9 & Ex. C, Deprivation Order, dated July 9, 2002. In his Amended Complaint, Plaintiff confirms that he engaged in such conduct. Am. Compl. at ¶¶ 26 ("**Benitez** threw a liquid substance through the narrow food port of his cell, striking Lennox and Martens.") & 28 (" **Benitez** [again] threw a liquid substance through the narrow food port on the gate of his cell."). Based on his judgment that Plaintiff continued to pose a security threat, Bradt continued the Deprivation Order until July 14th. Bradt Aff. at ¶ 9. On July 14th, Defendant Sgt. Martens recommended that the July 9th Deprivation Order be renewed because "on 7–9–02 [ **Benitez**] threw feces on staff/nurse" and on "7–10–02 spit on staff while being served misbehavior reports." *Id.* at ¶ 10 & Ex. C, Deprivation Order. On July 16th, Bradt authorized the renewal of the July 9th Deprivation Order, which was apparently expanded FN13 to include showers, cell property, sheets and mattress, and renewed it again on July 20, 22, 23, and 24, 2002, "because plaintiff posed a continued threat to the safety and security of staff, inmates, or State property." Bradt Aff. at ¶¶ 10–11 & Ex. C, Deprivation Order, dated July 20, 2002.

> FN13. *See supra* footnote 4.

For his part, Plaintiff alleges that these depriva-

tion orders were retaliatory in nature. He points to a July 24, 2002 letter Bradt sent to Kate Rainbolt, a Staff Attorney for Prisoner's Legal Services of New York, in which he stated:

> In response to your concerns be advised that inmate **Benitez** ... is house[d] in "A" tank in the Special Housing Unit at Auburn. He was involved in an Unusual Incident on 7/9/02 involving aggravated harassment. The throwing of ones own human waste on another person isn't normal. He was placed in A–1 cell as it has a more secure feed up hatch. A Mental Health referral was submitted and OMH advised that *because of his agitated state that he be deprived of any item that he could use to harm himself.* He has been given all of his entitled property. Inmate **Benitez** was placed on a restricted diet in accordance with procedures established in Deputy Commissioner LeClaire's memo dated 4/24/00.

**\*10 Benitez** Decl., Ex. D, Lt., dated July 24, 2002 (emphasis added).

Plaintiff argues that the italicized portion of the above letter undermines Bradt's statement that the Deprivation Orders were implemented due to his behavior. Pl.'s Mem. of Law at p. 11. That argument is without merit. The above letter provides additional confirmation of **Benitez's** gross acts, which Bradt asserts were the basis for the Deprivation Orders. Although Bradt mentions that certain objects were removed due to concerns over Plaintiff's mental health, that does not contradict his averment that the water, sheets, and other items were removed due to Plaintiff's behavior.

It is clear from the record that the above Deprivation Orders were issued in response to Plaintiff's own actions and history of misbehavior. *See Hudson v. McMillan,* 503 U.S. 1, 6 (1992) (noting that "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."

(internal quotation marks and citation omitted)). Plaintiff has offered no evidence beyond his own accusations to suggest otherwise. Because there is no evidence of any deliberate indifference on Defendants' part, it is recommended that these Eighth Amendment claims be **dismissed.**

### 3. *Cell Ventilation*

Plaintiff alleges he filed a Grievance on January 26, 2002, complaining about lack of ventilation in his cell that was causing him "bronchospasm and great difficulty breathing." Am. Compl. at ¶ 15. Plaintiff asserts that Defendants J. Burge and T. Eagen reviewed his Grievance and failed to remedy the situation, which caused Plaintiff to suffer, on July 1, 2002, "great difficulty breathing and lost consciousness," and a severely injured head. *Id.* at ¶¶ 16–17 & 24.

The record reflects that Plaintiff filed a Grievance, dated January 26, 2002, in which he complained that the plexiglass shield used to cover the opening in his cell did not provide adequate ventilation. Defs.' 7.1 Statement, Ex. K, Grievance, dated Jan. 26, 2002. In a Memorandum, dated April 13, 2002, Sgt. Martens noted that "[t]here are numerous holes drilled in [the] cell shield for adequate ventilation," and that he noticed upon inspection that **Benitez** "had piled in front of his cell shield four (4) bags of legal work—blocking his ventilation holes." *Id.,* Mem., dated Apr. 13, 2002. Plaintiff appealed the January 26th Grievance to Superintendent Burge, who denied his appeal on April 15, 2002, stating that "[a] private contractor completed a scientific survey of the air quality of all cells in SHU," and that "[a]ll cells meet or exceed air quality standards." *Id.,* Sup't Decision, dated Apr. 15, 2002. CORC also denied Plaintiff's Grievance on appeal. *Id.,* CORC Decision, dated May 15, 2002.

In another Grievance, dated July 1, 2002, Plaintiff complained that

**\*11** [o]n July 1, 2002, at about 7[ ] p.m., I began to sweat profusely and to experience great difficulty breathing normally (I suffer from asthma).

Thereafter, I "blacked out" (lost consciousness) and fell from my bed onto the floor, causing injury to my head. I have been experiencing difficulty in breathing normally and have been drifting in and out of [consciousness] for the past 6 months due to inadequate ventilation on the plexiglass which covers the entire front of my assigned cell.

Defs.' 7.1 Statement, Ex. N, Grievance, dated July 1, 2002.

That Grievance was denied after Nurse Administrator A. Driscoll reported that her examination of Plaintiff on July 3, 2002, had revealed no abnormality in Plaintiff's lungs, nor did he exhibit any difficulty breathing. *Id.,* Investigative Rep., dated July 10, 2002.

As Defendants point out, Plaintiff does not allege the nature of his alleged head injury, nor any other ventilation-related incident that occurred during the six-month period from January through July 2002 during which Plaintiff alleges to have been deprived of adequate ventilation. In addition, Plaintiff offers no evidence to substantiate his claims that he was denied adequate ventilation. The evidence available indicates that the protective plexiglass shield, which was imposed due to Plaintiff's affinity for throwing liquid substances from his cell, had holes in it, and that Plaintiff never presented to medical staff with breathing problems.

Given the evidence before us, we find that no questions of material fact exist with respect to these ventilation claims. Therefore, these claims should be **dismissed.**

### 4. *Denial of Meals*

In our previous Report–Recommendation addressing Defendants' Motion for Judgment on the Pleadings, we recommended dismissal of the majority of Plaintiff's claims regarding his alleged denial of meals. Dkt. No. 106 at pp. 11–12. However, we recommended against dismissal of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff's allegation that he was wantonly deprived breakfast and lunch on January 28, 2002, by Defendants Smith and Baranska, respectively. *Id.* at p. 12; Am. Compl. at ¶¶ 22–23.

Defendants have now submitted a Grievance, dated January 28, 2002, in which Plaintiff asserts that

[o]n 1/28/02, Sgt. Murler informed me that he had been advised that Sgt. Cooper or Lt. Easterbrook had placed me on a so-called pre-hearing restricted diet. I informed Sgt. Murler that any such pre-hearing diet would violate Directive 4933, § 304.2(b)(1)-(4) because that section does not authorize[d] imposition of a pre-hearing diet, and because I have not engage[d] in any misconduct that would warrant imposition of a restricted or pre-hearing restricted diet. Nevertheless, *I was offered a restricted diet for breakfast and for lunch, both of which I refused.*

Defs.' 7.1 Statement, Ex. J, Grievance, dated Jan. 28, 2002 (emphasis added).

Thus, by Plaintiff's own admission, he was offered both breakfast and lunch on January 28, 2002. Therefore, it is recommended that Plaintiff's remaining meal-deprivation claims be **dismissed.**

### 5. *Tightness of Shackles and Cuffs*

**\*12** Plaintiff alleges that on August 17, 23, 27, 28, and September 3, 2002, Defendant Considine "willfully and wantonly" placed handcuffs and shackles on his ankles and wrists too tightly, causing him "great pain and permanent nerve damage." Am. Compl. at ¶¶ 58–61. Plaintiff also alleges that on September 7, 2002, Defendant Clarke placed shackles on him too tightly, also causing him pain and nerve damage. *Id.* at ¶ 82. Defendants assert that the above allegations are conclusory and insufficient to state a valid claim under the Eighth Amendment as a matter of law. Defs.' Mem. of Law at pp. 30–33. We agree.

Although a cause of action may lie under the

Eighth Amendment for injuries caused by the wanton use of extremely tight handcuffs and/or shackles, *see, e.g., Davidson v. Flynn,* 32 F.3d 27 (2d Cir.1994), in this case, Plaintiff does not state enough facts to state a valid claim. Plaintiff does not allege for how long the handcuffs and shackles were applied, nor the circumstances of their application. He simply alleges that they were applied "wantonly" and caused severe pain and nerve damage, without any explanation as to how the nerve damage was caused or how he learned of such injury. *See Jemzura v. Public Service Com'n,* 961 F.Supp. 406, 413 (N.D .N.Y.1997) (citing *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.1987) for the proposition that "[e]ven a *pro se* Complaint must be dismissed if it contains only conclusory, vague or general allegations") (internal quotations omitted).

Therefore, it is recommended that these conclusory allegations be **dismissed** as a matter of law and pursuant to 28 U.S.C. § 1915(e) (2)(B)(ii), which gives the Court the power to dismiss *at any time* a complaint brought by a prisoner proceeding *in forma pauperis* for failure to state a claim.

### D. Retaliation

Plaintiff alleges that the Deprivation, Restraint, and Cell Shield Orders discussed above were issued against him in retaliation for lawsuits he filed in 1989. The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983) & *Franco v. Kelly,* 854 F.2d 584, 590 (2d Cir.1988) ), *overruled on other grounds by Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove that (1) he engaged in constitutionally protected conduct; (2)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

prison officials took an adverse action against him; and (3) a causal connection exists between the protected speech and the adverse action. *Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir.2003) (citations omitted); *see also Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

**\*13** A plaintiff may meet the burden of proving an inappropriate retaliatory motive by presenting circumstantial evidence of a retaliatory motive, such as temporal proximity, thus obviating the need for direct evidence. *Bennett v. Goord,* 343 F.3d at 138–39 (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia,* the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). Other factors that can infer an improper or retaliatory motive include the inmate's prior good disciplinary record, vindication at a hearing on the matter, and statements by the defendant regarding his motive for disciplining plaintiff. *McEachin v. Selsky,* 2005 WL 2128851, at \*5 (N.D.N.Y. Aug. 30, 2005) (citing *Colon v. Coughlin,* 58 F.3d 865, 872–73 (2d Cir.1995)).

### 1. *Deprivation Orders*

Plaintiff asserts that the November 2001 and July 2002 Deprivation Orders were issued in retaliation for lawsuits he filed against Burns and other Auburn employees in 1989. Am. Compl. at ¶¶ 8–11. The filing of lawsuits is conduct protected by the First Amendment, however, Plaintiff has failed to show a causal connection between the lawsuits he filed in 1989 and the issuance of the Depravation Orders. As discussed above, Plaintiff has offered no evidence to rebut Defendants proof that the Deprivation Orders were precipitated by Plaintiff's own actions and history of misbehavior. Furthermore, there is no evidence that the Deprivation Orders issued in 2001 were motivated by lawsuits he filed in 1989. Indeed, such a significant temporal gap undermines any allegation of a causal connection. Therefore, it is recommended that these retaliation claims be **dismissed.**

### 2. *Restraint and Cell Shield Orders*

Plaintiff asserts that Defendant Burns issued retaliatory Restraint and Cell Shield Orders against him on November 14, 2001, which were renewed through June 25, 2002, by Burns, Gummerson, Rourke, and Bradt. Am. Compl. at ¶¶ 8–11. Restraint Orders "designate what restraints need to be placed on inmates when they are out of their cells, including hand cuffs and leg irons." Bradt Aff. at ¶ 20. A cell shield is "a transparent cell front covering, equipped to provide adequate ventilation," which are ordered to, *inter alia,* protect against "[s]pitting through the cell door, or the throwing of feces, urine, food, or other objects through the cell door." N.Y. COMP.CODES R. & REGS. tit. 7, § 305.6(a)-(b).

Bradt asserts that Plaintiff was issued Restraint and Cell Shield Orders upon his arrival at Auburn on November 14, 2001, due to "**Benitez's** extensive record of threats, violence, and unhygienic acts toward staff" and history of disruptive behavior. Bradt Aff. at ¶¶ 14, 18, 21 & Exs. D–E, Shield and Restraint Orders, dated Nov. 14, 2001 through Sept. 10, 2002. Those Orders were subsequently renewed by Defendants Burns, Rourke, Gummerson, and Bradt on a weekly basis due to Plaintiff's disciplinary history. *Id.* at ¶¶ 15 & 22.

**\*14** Thus, Defendants have provided evidence that the Shield Orders were imposed for valid penological reasons. Beyond his allegations, Plaintiff offers no proof that the Shield and Restraint Orders were issued for any improper reason. Also, as mentioned above, the fact that he sued several Defendants in 1989 is not sufficient to demonstrate a causal connection to the Shield and Restraint Orders issued in 2001 and 2002. Therefore, it is recommended that these retaliation claims be **dismissed.**

### E. Due Process Claims

Plaintiff alleges that his due process rights were violated during the course of three separate Disciplinary Hearings conducted in November 2001 and July 2002. Am. Compl. at ¶¶ 2–7 & 41–50. In order to state a procedural due process claim pursu-

ant to the Fourteenth Amendment, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker,* 139 F.3d 329, 333 (2d Cir.1998) (citing *Kentucky Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Such interests are derived from the Fourteenth Amendment Due Process Clause itself or from state statute or regulations. *Id.* However, because Defendants do not challenge Plaintiff's assertion of a liberty interest, we move directly to the question of whether Plaintiff, prior to his confinement, was afforded the minimum requirements of due process. *Wolff v. McDonnell,* 418 U.S. 539, 556 (1974).

A prisoner placed in administrative segregation must be provided (1) advanced written notice of the charges against him at least twenty-four (24) hours prior to the hearing; (2) the opportunity to appear at the hearing, call witnesses, and present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564–66; *see also Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986); *Taylor v. Rodriguez,* 238 F.3d 188, 192 (2d Cir.2001) (quoting *Hewitt v. Helms,* 459 U.S. 460, 476 (1983) ).

1. *November 2001 Disciplinary Hearing*

Plaintiff alleges Defendant **Locastro** violated his due process rights at a Disciplinary Hearing that commenced on November 21, 2001. Am. Compl. at ¶¶ 1–6. Specifically, Plaintiff alleges that (1) he was denied the right to present a video as documentary evidence; and (2) **Locastro** improperly took confidential testimony from Wayne Crozier and, without offering any justification, refused to disclose the substance of such testimony. *Id.*

Plaintiff was transferred from Clinton Correctional Facility to Auburn on November 14, 2001. Am. Compl. at ¶ 8. On November 8, 2001, while still incarcerated at Clinton, Plaintiff was issued a Misbehavior Report accusing him of squirting a brown liquid that smelled like feces from a toothpaste tube on C.O. R. Duprey,[FN14] and charging him with the following violations: assault, threats,

disruptive behavior, harassment, and committing an unhygienic act. Defs.' 7.1 Statement, Ex. B, Misbehavior Rep., dated Nov. 8, 2001.

FN14. R. Duprey is not a Defendant in this action.

***15** During the Disciplinary Hearing, which was held at Auburn after Plaintiff's transfer, Plaintiff requested a copy of a security videotape from Clinton that would show the incident and allegedly prove his innocence. *Id.,* Ex. S, Disciplinary Hr'g Tr., dated Mar. 21, 2002, at p. 10. Defendant **Locastro,** who presided over the Hearing, adjourned the proceeding so Plaintiff could make his evidentiary requests through an assistant. *Id.* at pp. 11–12. When the Hearing resumed, **Locastro** read into the record a memo from Defendant Lt. Miller indicating that "there is no videotape of the incident available" because the "system which would normally record all the areas of our Special Housing Unit was not operating on 11/08/01." *Id.* at p. 13. **Locastro** noted that he couldn't "produce something that's unavailable." *Id.* at p. 14.

Later in the Hearing, Plaintiff asserted that in another recent Disciplinary Hearing held at Auburn concerning charges against him that also stemmed from events occurring at the SHU in Clinton on November 8, 2001, he was provided a videotape of that incident and was able to prove his innocence therewith. *Id.* at pp. 30–33. Notwithstanding that argument and Plaintiff's production of proof of the favorable disposition he received in that Hearing, **Locastro** still found Plaintiff guilty of creating a disturbance, assault on staff, committing an unhygienic act, and harassment; **Locastro** found Plaintiff not guilty of making threats. *Id.* at p. 34. In rendering his decision, **Locastro** relied on the testimony of C.O. Duprey and the confidential testimony of Mr. Wayne Crozier. *Id.*

Plaintiff alleges that **Locastro's** failure to produce a videotape of the November 8, 2001 incident at Clinton violated his due process rights. The record shows that **Locastro** attempted to obtain the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

video, but was informed of its unavailability in a memo from Defendant Miller. **Locastro** did not violate Plaintiff's due process rights when he relied upon Miller's statement that the videotape was unavailable. *See, e.g., Hodges v. Jones,* 873 F.Supp. 737, 744 (N.D.N.Y.1995) ("Due Process does not require that the hearing officer's credibility assessments or weighing of the evidence be evaluated; rather, the relevant standard is whether there is some evidence in the record to support the disciplinary decision.") (citing *Superintendent, Massachusetts Corr. Inst. v. Hill,* 472 U .S. 445, 455 (1985)). After reviewing the Hearing Transcript, it is clear that **Locastro's** disposition was based on "some evidence," which included Officer Duprey's testimony that Plaintiff squirted liquid fecal matter at him using a toothpaste tube. Defs.' 7.1 Statement, Ex. S, Disciplinary Hr'g Tr. at pp. 26–27. Finally, Plaintiff was provided notice of the charges against him, an opportunity to present other evidence and to question witnesses, and **Locastro's** disposition statement that included the evidence relied upon. *Id.* at pp. 1–35.

**\*16** Plaintiff also alleges that **Locastro** violated his due process rights when he took confidential testimony from Wayne Crozier. With respect to that testimony, Defendant **Locastro** has submitted an Affidavit asserting that

[a]fter reviewing the record and hearing from plaintiff, I decided to conduct a confidential interview, via telephone, of the Mental Health Staff at Clinton CF. I did so to determine if there were any medical or legitimate psychiatric reasons that would mitigate any penalty I might impose on Plaintiff. I excluded plaintiff from the interview as standard DOCS procedure at the time, to protect the mental health care staff from any possible retaliation and to insure their candor in relating whether or not an inmate's behavior could be excused or explained as resulting from mental illness.

I did not seek any evidence related directly to the charges in conducting the confidential interview.

I only sought to determine if there were mental health concerns that might have been relevant to plaintiff's behavior.

Dkt. No. 132, Joseph **Locastro** Aff., dated June 1, 2009, at ¶¶ 3–4. FN15

> FN15. In their Motion for Summary Judgment, Defendants submitted separately to Chambers for an *in camera* review a portion of the November 2001 Disciplinary Hearing Transcript that contained the confidential testimony of Wayne Crozier, which was identified as Exhibit T. Dkt. No. 118. Thereafter, the Court returned Exhibit T to Defendants' counsel and ordered that it would only approve an *in camera* review upon the submission of a formal request from Defendants. Dkt. No. 119. Thereafter, Defendants filed a Formal Application for permission to submit Exhibit T for an *in camera* review, which was denied. Dkt. Nos. 120 & 129. Subsequently, Defendants submitted **Locastro's** Affidavit in lieu of submitting Exhibit T. Dkt. No. 132.

Defendants note that pursuant to DOCS regulations, "[w]hen an inmate's mental state or intellectual capacity is at issue," the hearing officer "shall consider evidence regarding the inmate's mental condition or intellectual capacity." N.Y. COMP.CODES R. & REGS., tit. 7, § 254.6(b). Plaintiff has not offered any response to **Locastro's** averments. There is no evidence to suggest that Plaintiff's due process rights were in any way violated when **Locastro** interviewed Crozier to ascertain if there existed any mitigating circumstances occasioned by Plaintiff's mental health.

Therefore, it is recommended that these due process claims be **dismissed.**

### 2. *July 11, 2002 Disciplinary Hearing*
On July 11, 2002, Defendant Gummerson presided over a Disciplinary Hearing concerning

three separate Misbehavior Reports all issued on July 9, 2002. Plaintiff alleges that on July 11, 2002, Defendants C. Clarke and S. Crozier "willfully and knowingly falsely told Gummerson that **Benitez** had refused to attend [the hearing]." Am. Compl. at ¶ 41. **Benitez** asserts that Gummerson

> wilfully and wantonly commenced the hearing ... without making an attempt to interview [him] personally in order to ascertain (a) whether **Benitez** had been provided a copy of the misconduct reports ...; (b) whether **Benitez** had made a knowing, voluntary, and intelligent waiver of his right to attend the hearing; and (c) whether **Benitez** had been advised of the consequences of his failure to attend the hearing.

> *Id.* at ¶ 42.

Furthermore, Plaintiff asserts that after he was found guilty of charges, Clarke and Crozier refused to provide him with a copy of the hearing disposition sheet. *Id.* at ¶ 44.

Defendants have provided a copy of a Waiver Form, dated July 11, 2002, signed by Defendant Crozier, which indicates that Plaintiff refused to attend the Hearing and also refused to sign the waiver form acknowledging such refusal. Defs.' 7.1 Statement, Ex. D, Waiver Form, dated July 11, 2002. Defendants have also submitted a copy of an Inter–Departmental Communication from Clarke to Gummerson, in which Clarke states that on July 11, 2002, he delivered a copy of the disposition rendered in the July 11th Tier III Disciplinary Hearing as well as an appeal form to **Benitez**. *Id .,* Inter–Dep't Comm., dated July 11, 2002. Finally, a case data worksheet reflects that Plaintiff was provided copies of the three Misbehavior Reports on July 10, 2002. *Id.,* Case Data Worksheet, dated July 10, 2002.

**\*17** Beyond his own accusations, Plaintiff has offered nothing to rebut the Defendants' documentary case. *See* Pl.'s Mem. of Law at pp. 16–19. Although Plaintiff alleges that Gummerson knew that he did not have copies of the July 9th Misbehavior Reports because he was under Deprivation Orders and "that Clarke and Crozier had falsely notified him [on July 11, 2002] that **Benitez** had refused to attend the hearing," Pl.'s Mem. of Law at p. 17, there is nothing in the record to substantiate those claims. *See Scott v. Coughlin,* 344 F.3d 282, 287 (2d Cir.2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."). Furthermore, Plaintiff has offered no legal support for his conclusion that a hearing officer is required to personally interview an inmate in order to assure the voluntariness of his waiver of appearance, nor has the Court's research revealed any precedents supporting such conclusion. Therefore, because Plaintiff received a copy of the Misbehavior Report, waived his right to attend the Disciplinary Hearing, and was provided a copy of its disposition, it is recommended that these claims be **dismissed.** *See Dawes v. Carpenter,* 899 F.Supp. 892, 897 (N . D.N.Y.1995) (citing *Boddie v. Connecticut,* 401 U.S. 371 (1971) for the proposition that "[d]ue process requires only that an accused have an opportunity to be heard, an opportunity that can be waived").

### 3. *July 16, 2002 Disciplinary Hearing*

Plaintiff makes similar allegations concerning his July 16, 2002 Disciplinary Hearing: (1) John Doe No. 7 denied him a copy of the Misbehavior Report; (2) Clarke and Considine "falsely told Defendant Wolcyzk [ ] that **Benitez** had refused to attend" the Disciplinary Hearing; (3) Wolcyzk "wantonly commenced the hearing without making an attempt to interview **Benitez** personally" in order to determine if his waiver was voluntarily and intelligently made; and (4) Clarke and Crozier "refused to provide [him] a copy of the hearing disposition sheet." Am. Comp. at ¶¶ 45–47 & 49.

The July 16, 2002 Disciplinary Hearing concerned a Misbehavior Report issued against Plaintiff on July 10, 2002. Defs.' 7.1 Statement, Ex. E, Misbehavior Rep., dated July 10, 2002. Once

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

again, Defendants have submitted documentary evidence that Plaintiff waived his right to be present at the Disciplinary Hearing and was provided a copy of the disposition. A "Refusal to Attend Hearing" Form, dated July 16, 2002, reflects that Plaintiff refused to attend the July 16 Tier III Hearing and also refused to sign the refusal form. *Id.,* Refusal to Attend Hr'g Form, dated July 16, 2002. Also in the record is an Inter–Departmental Communication from Clarke to Wolcyzk indicating that he delivered Plaintiff a copy of Wolcyzk's disposition on July 17, 2002, as well as an appeal form. *Id.,* Inter–Dep't Comm., dated July 16, 2002. Finally, a Case Data Worksheet shows that Plaintiff was given a copy of the July 10 Misbehavior Report. *Id.,* Case Data Worksheet, dated July 11, 2002.

**\*18** Contrariwise, Plaintiff has offered no evidence in support of his allegations. Therefore, because Plaintiff has failed to show a material question of fact exists with respect to these due process claims, it is recommended that they be **dismissed.**

### F. Failure to Serve

Under Federal Rule of Civil Procedure 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m) .FN16 Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

> **FN16.** Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L .R. 4.1(b).

In this case, there is no indication that the Defendants John Does Nos. 1–7, and C.O. Smith FN17 were properly served. Because Plaintiff's claims against John Doe No. 7 and C.O. Smith lack

merit, granting Plaintiff the opportunity to properly serve these unnamed Defendants would be futile. Thus, it is recommended that Plaintiff's claims against John Doe No. 7 and C.O. Smith be **dismissed.** As previously discussed, we have recommended that Plaintiff's claims against John Does Nos. 1–6 not be dismissed. Should the District Court adopt that recommendation, we will afford Plaintiff the opportunity to file a motion to amend his Amended Complaint in order to name John Does Nos. 1–6. If such motion is submitted and granted, we would at that time direct the effectuation of service on John Does Nos. 1–6.

> **FN17.** C.O. Smith is named "R. Smith" on the Docket, but we have referred to him as "C.O. Smith" in order distinguish him from Defendant Nurse R. Smith. *See* Dkt. No. 106 at p. 4 n. 3. Nurse R. Smith has been served with process, Defendant C.O. Smith has not. Dkt. Nos. 13 & 37.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED,** that the Defendants' Motion for Summary Judgment (Dkt. No. 118) be **GRANTED in part** and **DENIED in part** in accordance with the above opinion; and it is further

**RECOMMENDED,** that should the District Court adopt this Report–Recommendation, the only remaining Defendants will be Rourke and John Does Nos. 1–6; and it is further

**ORDERED,** that should the District Court adopt this Report–Recommendation, Plaintiff shall be afforded ***thirty (30) days*** from the date of such adoption to file a motion to amend his Amended Complaint in order to identify John Does Nos. 1–6, which shall include a proposed Second Amended Complaint attached thereto; and it is further

**ORDERED,** that the Clerk of the Court serve a copy of this Report–Recommendation and Order upon the parties to this action.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs .,* 892 F.2d 15 (2d Cir.1989)); *see also* 28 U.S.C. § 636(b) (1); FED. R. CIV. P. 72, 6(a), & 6(e).

N.D.N.Y.,2010.

Benitez v. Locastro

Not Reported in F.Supp.2d, 2010 WL 419999 (N.D.N.Y.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.